THE ATLANTIC AND PACIFIC TELEGRAPH COMPANY, Respondent, *v.* JAMES A. BARNES et al., Appellants.

The sureties upon a bond given by an employe to his employer, conditioned that the former will faithfully account for all moneys and property of the latter coming to his hands, are not discharged from subsequent liability by an omission on the part of the employer to notify them of a default on the part of their principal known to the employer, and a continuance of the employment after such default, in the absence of evidence of fraud and dishonesty on the part of the employe.

*It seems*, that the rule is otherwise where the default is of a nature indicating want of integrity in the employe, and this is known to the employer.

(Argued February 15, 1876; decided March 21, 1876.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York in favor of plaintiff, entered upon an order denying a motion for a new trial and directing judgment upon a verdict. · (Reported below, 7 J. & S., 40.)

This action was upon a joint and several bond executed by defendants to the plaintiff upon the employment by the latter of defendant William E. Barnes.

The bond was conditioned, among other things, that said Barnes should "faithfully account for all moneys and property belonging to said Atlantic and Pacific Telegraph Company which shall come to his hands, whether the same shall be paid or delivered to him by said Atlantic and Pacific Telegraph Company to be disbursed or used for its account, or shall be received by him from other persons for the use and benefit of said Atlantic and Pacific Telegraph Company, or shall come to his hands in any other manner."

The bond in question was executed, and Barnes entered into the employment of defendant, December 22, 1873. It was admitted on the trial, that on January 30, 1874, Barnes was in default to the plaintiff in the sum of fifteen dollars and ninety-two cents, of which plaintiff had knowledge, but

SICKELS—VOL. XIX. 49

did not notify the sureties, and continued Barnes in its employ until March 24, 1874, when he was discharged. His default at that time amounted to $269.67.

A motion on the part of defendants to dismiss the complaint was denied, and the court directed the jury to find a verdict for the plaintiff for the full amount. Defendants duly excepted. A verdict was rendered accordingly.

Exceptions were ordered to be heard at first instance at General Term.

*Samuel Hand* for the appellants. Defendants were discharged from all liability upon their bond after their principal's default had been discovered by his employer, he having retained him in his employ. (*Rallston* v. *Mathews*, 10 C. & F., 934; *Phillips* v. *Foxall*, L. R., 7 Q. B., 666; *Sanderson* v. *Asten*, L. R., 8 Eq., 83; Story Eq. Jur., 324–326; 2 Vern., 518; 3 Eng., 272; 11 Am., 237; De Colyer on Guar. and Sec. [5th Am. ed.], 434; *Graves* v. *Nat. Bk.*, 10 Bush [Ky.], 23.) There was an implied covenant on the part of the employer with defendants that he would use ordinary care and diligence during the employment of their principal. (Fell on Guar. and Sur., 229.) Plaintiff's admissions were enough to discharge defendants from all liability after the first default. (2 Vern., 518; 3 Eng. R., 272; L. R., 7 Q. B., 66; L. R., 8 Eq., 73; *Burgess* v. *Eve*, L. R., 13, 450, 458; *Hunt* v. *Roberts*, 45 N. Y., 696; 2 Pars. on Con., 31; *Rees* v. *Berrington*, 2 Ves. Jr., 540; Burge on Suretyship, 263; 18 Ves., 20; 7 Hill, 250; 9 Cl. & F., 1, 45, 47; Fell on Guar. and Sur., 449, 518.)

*Charles Edward Souther* for the respondent. Nothing in plaintiff's admissions constituted a defence to the action. (*People* v. *Berner*, 13 J. R., 383; *Alb. D. Ch.* v. *Vedder*, 14 Wend., 165; *Looney* v. *Hughes*, 26 N. Y., 522; *Schroeppell* v. *Shaw*, 3 id., 446; *Remsen* v. *Beekman*, 25 id., 552, 557; *B. R. Bk.* v. *Page*, 44 id., 453; *McKenzie* v. *Ward*, 58 id., 541; *P. and C. R. R. Co.* v. *Schaeffer*, 59 Penn., 356.)

MILLER, J.   This action was upon a bond executed by the defendants for the benefit of one of them, who was an employe of the plaintiff.   About one month after the bond was given, the principal was in default for a small amount, of which the plaintiff had knowledge.   He did not notify the sureties of such default, but continued to employ the principal until the default had increased to the amount claimed in the complaint. It is insisted that the failure of the plaintiff to give such notice exonerated the sureties from liability for any subsequent defalcation or dishonesty of the principal during his continuance in plaintiff's service, and that by reason of this neglect they were discharged from liability.   The principle contended for is not without sanction, and the question to be determined here is to the application of certain established rules, and the adjudications of the courts to the facts presented upon this appeal.

Judge STORY, in his work on Equity Jurisprudence (§ 324), lays down the rule that "any concealment of material facts, or any express or implied misrepresentation of such facts, or any undue advantage taken of the surety by the creditors, either by surprise or by withholding proper information, will undoubtedly furnish sufficient ground to invalidate the contract."   The English authorities, especially those of a recent date, go very far to uphold the position that the employer is bound to notify those who have become guarantors for the faithful discharge of the duties which the employe has assumed to perform, of any defalcation or dishonesty on the part of the latter, as will be seen by a brief reference to some of the leading cases.   In *Railton* v. *Mathews* (10 Clark & F. [House of Lords Cases], 934), an action was instituted to avoid a bond executed for the fidelity of a commission agent to his employers, upon the ground of concealment of material circumstances affecting the agent's credit prior to the date of the bond, and which if communicated to the surety would have prevented him from undertaking the obligation, and it was laid down, that mere non-communication of circumstances affecting the situation

of the parties, material for the surety to be acquainted within the knowledge of the person obtaining the surety bond was undue concealment, though not willful or intentional, or with a view of any advantage to himself. In this case the conceal-ment alleged was prior to the execution of the bond, and hence it bears a different aspect than if the facts concealed had transpired after the bond had been executed.

In *Phillips* v. *Foxall* (L. R., 7 Q. B., 666), where there was a continuing guaranty of the honesty of a servant, it was held that if the master discovers that the servant has been guilty of dishonesty in the course of the service, and instead of dismissing the servant he chooses to continue him in his employ without the knowledge and consent of the surety, express or implied, he cannot afterward have recourse to the surety to make good any loss which may arise from the dis-honesty of the servant during his subsequent service. A later case, *Sanderson* v. *Aston* (L. R., 8 Exch., 73), upon the authority of *Phillips* v. *Foxall*, upholds substantially the same principle. (See, also, *Burgess* v. *Eve*, L. R., 13 Eq., 450, 458; *Montague* v. *Tidcombe*, 2 Vern., 518.)

The early adjudicated cases in this State have not gone to the extent of the rule laid down, perhaps for the reason that no case of palpable dishonesty, known to the employer, was actually presented which required the courts to determine the precise question whether notice was demanded under such circumstances. It is not necessary to examine them in detail, as those as well as other cases bearing on the question are fully considered and sharply criticised in the opinion of Judge Folger, in *McKecknie* v. *Ward* (58 N. Y., 541). In that case an action was brought upon a bond in the penalty of $2,000, conditioned for the performance by the principal of a contract between him and the plaintiffs, which was recited in the bond, and it was held that a contract of suretyship for the performance, by a vendee, of a continuing agreement of purchase and sale, by which goods purchased from time to time, as required, are to be paid for at stated periods, is not discharged by mere forbearance on the part of the

vendor, to enforce payment as provided for by the contract, without a binding agreement for the extension of time. It was there said that mere indulgence of the creditor in such a case was not enough to discharge the surety; that beyond the bare neglect of the creditor to enforce payment, there must be some connivance or gross negligence amounting to willful shutting of the eyes to fraud. The case was distinguished from *Phillips* v. *Foxall* and *Sanderson* v. *Aston (supra)*, as those related to master and servant, and the obligation incurred was that there should be no breach of duty, and for the honesty of the principal. If, in such a case as the one last cited, connivance and gross negligence will discharge the surety, it would seem that quite as strong reasons exist for discharging sureties where it is known to the master that the servant has been dishonest, and has appropriated to his own use funds which he has received by virtue of his employment, and, with full knowledge of such a dereliction of duty, continues to allow such servant an opportunity to increase his defalcation. Such conduct of the master would be a clear violation of the rule which obligates him to do no act which would injure or impair the liability of the sureties.

The bond executed by the defendants in this case provided that the principal should faithfully account for all moneys and property which should come to his hands, and the admission made upon the trial shows that he was in default to the knowledge of the plaintiff, and no notice given of said default to the sureties. The nature of such default and how, or under what circumstances it arose, is not proved, and we are left to inference to determine its origin and real character. In *Phillips* v. *Foxall (supra)* and kindred cases, the dishonesty of the servant was conceded, and no question was presented as to that fact. While here it is not entirely manifest that the default was occasioned by dishonesty, perhaps temporary absence, sickness or some unavoidable accident may have prevented an accounting by the principal, and delayed payment of the amount in arrears, and it may be

accounted for on the assumption that there was no breach of honesty or want of integrity on the part of the servant. If the default of the principal was merely casual, and without fraud or dishonesty, then, within the rules laid down, there was no concealment of material facts, or suppression of proper information, which rendered the contract of the sureties invalid. Where such a defence is interposed the proof should be reasonably clear that the delinquency was caused by dishonest conduct or a gross violation of the obligations imposed by the bond. We think that there is a want of evidence in this respect, and, for this reason, the court was right in denying the motion to dismiss the complaint, and in directing a verdict for the plaintiff.

The judgment should be affirmed, with costs.

All concur, except Allen and Earl, JJ., not voting.

Judgment affirmed.