WATERTOWN FIRE INSURANCE COMPANY *vs.* GEORGE W. SIMMONS & others.

Suffolk.   January 18. — April 6, 1881.   COLT & FIELD, JJ., absent.

An agent of an insurance company gave a bond, with sureties, to the company, conditioned for the faithful performance of his duties as agent, according to the by-laws of the company. A by-law required that the agents of the company should render monthly accounts and pay each month the balance due to the company. The agent rendered his accounts regularly; but, one month, did not pay the whole balance due from him, and thereafter for more than a year his indebtedness to the company increased from month to month until it exceeded the penal sum in the bond, when, for the first time, the sureties were notified. *Held*, that these facts did not discharge the sureties.

MORTON, J.  This is an action against the defendants as sureties upon a bond given by George L. Dix, conditioned for the faithful performance of his duties as agent of the plaintiff, "according to the by-laws, rules and regulations of said company."

One of the by-laws of the company required that the agents should render monthly accounts, and should pay each month the balance due to the company. It appeared that Dix rendered his monthly accounts regularly, but that in December 1877 he failed to pay the whole balance due by him; and that thereafter his indebtedness to the company increased from month to month until his death in March 1879, when he owed a balance larger than the penal sum of the bond. The plaintiff did not notify the sureties of his default until after his death. The defendants contend that they were discharged from their liability as sureties by these facts.

It is too well settled to be questioned, that the delay of the plaintiff to collect the monthly payments due by Dix would not of itself discharge the sureties. Mere delay by the creditor to proceed against the debtor, unaccompanied by fraud or an agreement to give time, does not discharge the sureties. *Hunt* v. *Bridgham*, 2 Pick. 581. The defendants contend that the by-law, being referred to in the bond, "amounts to a contract between the plaintiff and the sureties that the plaintiff will not knowingly permit the agent to depart from the duty there

recited." The sole object of the bond was to secure the per-
formance by Dix of his duties under the by-laws, and they are
referred to only for the purpose of defining these duties. They
cannot be construed as importing a stipulation with the sureties
that the plaintiff shall cause them to be observed and kept,
under the penalty of discharging the sureties. Such by-laws are
directory merely, and a failure to observe them by the plaintiff or
its managing officers will not discharge the sureties. *Amherst
Bank* v. *Root*, 2 Met. 522. *Locke* v. *United States*, 3 Mason, 446.

But the principal ground of defence is that it was the duty
of the plaintiff, within a reasonable time, to notify the sureties
of any default of the agent, and that the failure to do so was
laches which discharged them. It may be questioned whether,
if there was negligence of the other officers or agents amounting
to laches, the corporation would be affected by it, as the object
of the bond was to give the stockholders the double security of
the supervision of its officers and the obligation of the sureties.
*Amherst Bank* v. *Root, ubi supra*. But treating this case as if
it were the case of an individual obligee, we are of opinion that
there is no rule of law which makes it a duty which the creditor,
under the circumstances of this case, owes to the surety, either
to dismiss its agent or to notify the surety of his default. If a
creditor does any act which injuriously affects the situation and
rights of the surety, such as giving time to the debtor, or relin-
quishing security which he holds for the debt, he discharges the
surety either in whole or *pro tanto*. But the creditor owes no
duty of active diligence to take care of the interest of the surety.
It is the business of the surety to see that his principal performs
the duty which he has guaranteed, and not that of the creditor.
*Wright* v. *Simpson*, 6 Ves. 714. *Adams Bank* v. *Anthony*, 18
Pick. 238. *Taft* v. *Gifford*, 13 Met. 187. *Tapley* v. *Martin*, 116
Mass. 275. The surety is bound to inquire for himself; and
cannot complain that the creditor does not notify him of the
state of the accounts between him and his agent, for whom the
surety is liable. Mere inaction of the creditor will not discharge
the surety unless it amounts to fraud or concealment.

The defendants rely upon the cases of *Phillips* v. *Foxall*, L. R.
7 Q. B. 666, *Enright* v. *Falvey*, 4 L. R. Ir. 397, and *Sanderson*
v. *Aston*, L. R. 8 Ex. 73. In the first two cases, it was held

that, in the case of a continuing guaranty for the honesty of a servant, if the master discovers acts of dishonesty in the servant and afterwards continues him in his service without notice to the sureties, the latter are discharged. We have no occasion to discuss these cases further than to say that they have no application to the case before us, because it is not contended that the agent Dix, for whom the defendants were bound, was guilty of any defalcations or other dishonest or fraudulent conduct. In *Sanderson* v. *Aston*, the declaration was on a bond guaranteeing that one J., a clerk of the plaintiff, should pay over all money he received on the plaintiff's account; the plea was, that, before the defaults sued for, J. had committed other defaults of the same kind, and the plaintiff, knowing this, continued to employ him without notice to the defendant. On demurrer, this plea was held good. Chief Baron Kelly, in delivering his opinion, says, " The case of *Phillips* v. *Foxall* clearly shows that, if any defaults or breaches of duty, whether by dishonesty or not, have been committed by the employed against the employer, under such circumstances that the employer might have dismissed the employed, the surety is entitled to call on the employer to dismiss him." This decision does not seem to be sustained by *Phillips* v. *Foxall*, which was a case of criminal embezzlement by the servant, and we are not aware of any other decisions sustaining it, at least in this country. Its effect would be to impose upon the creditors the duty of notifying the sureties whenever there are any arrears in the accounts of the agent or servant for whom they were bound, from whatever cause arising. We do not think that any such active duty of diligence to protect the sureties grows out of the relations of the parties, and are not able to agree with the decision in *Sanderson* v. *Aston*, regarding it as in conflict with the general current of authorities.

This question was considered in *Atlantic & Pacific Telegraph Co.* v. *Barnes*, 64 N. Y. 385; and it was held that continuing an agent in service after a default is known, without notice to the surety, does not discharge him, no fraud or dishonesty being shown. See also *McKecknie* v. *Ward*, 58 N. Y. 541.

Upon the whole case, therefore, we are of opinion that, upon the facts stated in the bill of exceptions, the sureties were not

discharged; and that the Superior Court rightly found for the plaintiff. *Exceptions overruled.*

C. *Allen & J. Fox*, for the defendants.

G. *A. Torrey*, for the plaintiff.