[Civil No. 212.   Filed March 14, 1888.]

[S. C. 17 Pac. 10.]

THE TERRITORY OF ARIZONA, Plaintiff and Appellee, v. EDWARD J. COOK, et al., Defendants and Appellants.

1. PRINCIPAL AND SURETY—DEFALCATION—FALSE REPORT BY PRINCIPAL—SURETIES ESTOPPED.—In an action upon a treasurer's official bond to recover a shortage his sureties are estopped from denying the truth of their principal's reports, as to amount of money on hand made just prior to the execution of the bond and during its life, for the purpose of showing that the defalcation occurred during his previous term.

APPEAL from a Judgment of the District Court of the Third Judicial District in and for the County of Yavapai. James H. Wright, Judge. Affirmed.

The facts are stated in the opinion.

Rush, Wells & Howard, and E. M. Sanford, for Appellants.

The defense below and the appeal here is made on behalf of the sureties on the official bond of the County Treasurer and not on behalf of the principal. The bond in question was given under the Revised Statutes of Arizona of 1887, and the amendments thereto, and not under the present statute which is a copy of the Illinois statute, so that the decisions

of Illinois while of persuasive force in construing the present statute, are of no weight in determining the liability in this case.

In *U. S.* v. *Eckford,* 1 How. 263, it was said: "The amount charged to the collector at the commencement of the term is only *prima facie* evidence against the sureties. If they can show by circumstances, or otherwise, that the balance charged, in whole or in part, had been misapplied by the collector prior to the new appointment, they are not liable for the sum so misapplied." "It is, of course, always open to the defendants, sought to be charged, to show by opposing proof that the default occurred before the commencement of their liability." *United States* v. *Stone,* 106 U. S. 525, 1 Sup. Ct. Rep. 287.

The Treasurer's bond is for the term of two years. The sureties are only bound for the faithful performance of duty during that term. *Hewitt* v. *State,* 6 Har. & J. 95, 14 Am. Dec. 259, 260. The law prescribing duty of Supervisors and other officers of the county, existing at the time of entering into the bond, is part of the same. *Bigelow* v. *Bridge,* 8 Mass. 275. The question is how much money was in the hands of the treasurer at the time he entered upon the performance of the duties of his office, and, although the Treasurer might be estopped to show that he had falsified his accounts at the termination of his previous term, no such estoppel works against the sureties, who entered into no obligation concerning his actions in the preceding term. The sureties stand ready to comply strictly with the law and the letter of their obligation, "That as such Treasurer he will honestly pay over all money then in his hands, and which may hereafter come to him," and *not* that he has not in the past been in default, and that they assume to indemnify for past defalcation. The fault, or misrepresentation, or anything which misleads the sureties, and induces them to sign the bond, may be shown in defense. *Gasconade Co.* v. *Sanders,* 49 Cal. 192; *Fulton* v. *Hood,* 34 Pa. St. 365, 75 Am. Dec. 664; *Moore* v. *Boudinot,* 64 N. C. 190. Where an officer serves two terms, the sureties of his bond for the last term are not liable for the

money he should have had, as Treasurer at the commencement of that term, but which he converted during the first term. *Township of Paw Paw* v. *Eggleston*, 25 Mich. 36; *City of Detroit* v. *Weber*, 29 Mich. 24, 108; *Vivian* v. *Otis*, 24 Wis. 518, 1 Am. Rep. 199; 5 Waits Act. and Def. 6; *St. Louis* v. *Sickles*, 52 Mo. 122-127; *Farrar* v. *United States*, 5 Pet. 389; *United States* v. *Boyd*, 15 Pet. 208; *Hood* v. *Mathis*, 21 Mo. 308; *Hyneman* v. *Eder*, 17 Cal. 437, 79 Am. Dec. 139; *People* v. *Buster*, 11 Cal. 108; Vol. 8, No. 11, *Chicago Law Journal* for February, 1887; *Moore* v. *Potter*, 12 Am. Law Reg. 770.

Each term is a new office. *Poole* v. *Cox*, 9 Ired L. 69, 49 Am. Dec. 410; *Savings Bank* v. *Hunt*, 72 Mo. 602, 603, 37 Am. Rep. 449.

The bond of an officer for a term fixed by law is not security for, nor are sureties liable for, breach of duty during another term. *Treasurer of State of Vermont* v. *Mann*, 34 Vt. 371, 80 Am. Dec. 688. They are liable only for acts subsequent to the time the bond was given. *Jeffers* v. *Johnson*, 18 N. J. L. 382; *Meyers* v. *United States*, 1 McLean, 493, Fed. Cas. No. 9996; *Mayor etc.* v. *Horn*, 2 Harr. (Del.) 190.

Settlements made by the Treasurer with the county officers are not conclusive as against the sureties. *Moore Co. Com.* v. *McRae*, 89 N. C. 95; *Lewis* v. *Lee Co.*, 73 Ala. 148; *Van Sickel* v. *Buffalo Co.*, 13 Neb. 103, 42 Am. Rep. 753, 13 N. W. 19; *Webster Co.* v. *Hutchinson*, 60 Iowa, 721, 9 N. W. 901, 12 N. W. 534; *Missoula Co. Comm'r's.* v. *McCormick*, 4 Mont. 115, 5 Pac. 287; *Mutual L. & B. Assn.* v. *Price*, 19 Fla. 127; *Potter* v. *School Trustees*, 11 Ill. App. 280; *Hoboken* v. *Kamena*, 41 N. J. L. 437; *Rogers* v. *State*, 99 Ind. 218; *Cox* v. *Hill*, 5 Lea. (Tenn.) 146; *Hunt* v. *State*, 93 Ind. 311; and see Murphy on Official Bonds, secs. 634, 636, 637, 638.

The statute required the Board to *count the money on hand* at the close of the previous term, and that provision entered into the obligation of the sureties and they had a right to believe that the board had done its duty and have a right to show that the money was not in fact in the Treasurer's hands at the commencement of the term. They are presumed to contract on the faith of it. *U. S.* v. *Nicholl*,

12 Wheat. 505; *Walsh* v. *Bailie,* 10 Johns. 180; *U. S.* v. *Boyd,* 15 Pet. 187; *Riddel* v. *School Dis.,* 15 Kan. 168; *Mayor etc.* v. *Horn,* 2 Harr. 190; *Chelmsford Co.* v. *Demasert,* 7 Gray, 1; *Mayor of Rahway* v. *Crowell,* 40 N. J. L. 207, 29 Am. Rep. 244; *Winneshiek Co.* v. *Maynard,* 44 Iowa, 15.

The Supervisors were in contemplation of law, the agents of the obligee in the bond, and the sureties were justified in acting upon presumption that they had performed their whole duty in counting the money, and knowing that it was in the treasury as they certified. *Inhabitants* v. *Randall,* 105 Mass. 295, 8 Am. Rep. 519; *Farrar* v. *U. S.,* 5 Pet. 374; *U. S.* v. *Boyd,* 15 Pet. 208; *U. S.* v. *Eckford Ex.,* 1 How. 262; *U. S.* v. *Boyd,* 5 How. 48; *Bruce* v. *U. S.,* 17 How. 443; *Nolley* v. *County Court,* 11 Mo. 447; *Mahaska* v. *Ingalls,* 16 Iowa, 85; *Bessinger* v. *Dickman,* 20 Iowa, 261; *Detroit* v. *Weber,* 29 Mich. 24; *Bissell* v. *Saxton,* 66 N. Y. 55; *Patterson* v. *Inhabitants,* 38 N. J .L. 256; *Vivian* v. *Otis,* 24 Wis. 518, 1 Am. Rep. 199.

Briggs Goodrich, Attorney-General, for Appellee.

BARNES, J.—This was a suit by plaintiff upon the official bond of defendant Cook as treasurer of the county of Yavapai. It appears that he has been such treasurer for five successive terms of two years each. That at the expiration of the term ending December 31, 1884, he, as such treasurer, as required by law, (chapter 6, and amendment of October 4, 1867, Comp. Laws,) had and filed with the board of supervisors of Yavapai county, his regular quarterly and annual settlements. That in such settlements he charged himself with the sum of $46,026.23, as being the balance in his hands as such treasurer. That such settlements were duly examined and approved by the said board of supervisors. That thereafter, during his last term of office, and at his first quarterly settlement as such treasurer, he charged himself with said balance as having actually come to his hands from himself as his predecessor, and continued afterwards from time to time, at each annual and quarterly settlement, to report the same in his hands, or using said balance in his first quarterly set-

tlement, and then the balance from each settlement as made and shown therein. That each settlement commenced with the statement of the balance in treasury or on hand at last settlement, and ended with a statement of balance in treasury. That each and every part of said settlements were duly approved by the said board of supervisors, except the last statement of account, which was also approved after some corrections, and changes were made in the same by said Cook and said board of supervisors. That the books of said E. J. Cook as such treasurer show the same balances and amounts as the settlements made by him. It was made to appear that at the time of his final settlement the amount of money which his last approved statement showed to be in his hands as such treasurer was not there; in fact that the treasury was short the amount of money sued for. The bond sued on is the official bond for the term 1885 and 1886, and the suit is for money which his statements and settlements represented as being in the treasury at the end of that term. Defendants asked to be allowed to introduce evidence as to what had occurred before the board of supervisors at the times of the successive settlements of his accounts; to ask whether the money in the treasury was actually counted; to ask whether, at the time of the settlement in December, 1884, and before this bond was given, he actually had in the treasury the money his statements showed, and so as to the succeeding statements; to ask whether he did not produce certificates of deposits upon various banks as cash in the treasury. This evidence the court refused to allow. These rulings present the question asked by the appellants: "Are the sureties permitted to go behind the settlements made by the board of supervisors with the treasurer, and show that the default charged occurred before the commencement of their liabilities?" They urge with great force and ability that they should be allowed to show that the statements by the treasurer of the amount of money on hand were false, and that the defalcation occurred before this bond was executed, and that the shortage in the cash was continued down to the end of this last term.

The obligation of this bond, among other things, was that the treasurer should faithfully discharge the duties of his office. One of his duties was to correctly report to the board of supervisors the amount of money in the treasury. To falsely report was a breach of his duty, for which his sureties were liable on this bond. It is conceded that the sureties on this bond are not liable for breaches of duty during the former term of office. The cases cited upon this point will not be questioned. The question here is this: May he and his sureties dispute that he had in the treasury the money that he reported from time to time that he had, and on the faith of which reports his settlements were made and approved? It is admitted by appellants that the treasurer is estopped, but they insist that the sureties are not, and that they may show that the statement of money on hand December, 1884, just before the term covered by their bond began, was false, and that the treasurer did not then have the money. They permitted him, from time to time thereafter, to report the amount of money on hand. They could, before they executed the bond, and at any time thereafter, have ascertained the amount of cash in the treasury, and so verify his reports. His sureties had notice, or are charged with notice, of the amount of money he reported as in his hands at the beginning of his last term. They obligated themselves that he should "pay over all money then in his hands." They, as well as he, are estopped to deny that that money was in his hands. The same point was urged in *Morley* v. *Town of Metamora*, 78 Ill. 394, 20 Amer. Rep. 266, and the sureties were held liable. "The supervisor was his own successor in office. He had made his annual report, in which he charged himself with having a certain amount of money in his hands. That report was approved, and we must presume it was true." "Conceding that fact, (that default occurred in former term,) we do not think it relieves the sureties on the bond upon which this action is brought from liability." To the same effect is *Pinkstaff* v. *People*, 59 Ill. 148. In *Roper* v. *Trustees of Sangamon Lodge*, 91 Ill. 518, 33 Am. Rep. 60, it was urged "that the court should have

admitted evidence that the defalcation occurred the term before appellants became sureties on this bond." Upon the authority of the foregoing cases, judgment was affirmed. In *Chicago* v. *Gage,* 95 Ill. 593, 35 Amer. Rep. 182, the court say: "Gage was his own successor in office. It was his duty, as incoming treasurer, to receive the treasury balance from his predecessor. If he entered it in his treasury books after the beginning of his second term as having actually come to his hands from his predecessor, and continued afterwards, from time to time, to return and report the same as in his hands, both he and his sureties, we think, should now be concluded from denying that this balance did actually come into Gage's hands as treasurer." It was his duty to keep such accounts, and make such reports; and to "falsify them, and show that these balances, etc., were not at the time actually in the treasury, would be inadmissible, as we conceive, upon sound legal principle." "And we are of opinion that the sureties should be equally concluded here with Gage himself." The court cites *Commissioners* v. *Mayrant,* 2 Brev. 228; *McCabe* v. *Raney,* 32 Ind. 309; *Stovall* v. *Banks,* 10 Wall. 583; *Baker* v. *Preston,* 1 Gilmer (Va.), 235; *U. S.* v. *Girault,* 11 How. 27; *Evans* v. *Keeland,* 9 Ala. 42. In *Insurance Co.* v. *Simmons,* 131 Mass. 85, 41 Am. Rep. 196, the court held the sureties were not discharged by laches of creditor in not compelling payment after knowledge of default. "It is the business of the surety to see that his principal performs the duty which he has guarantied, and not that of the creditor." *Wright* v. *Simpson,* 6 Ves. 714; *President etc. Adams Bank* v. *Anthony,* 18 Pick. 238; *Atlantic & Pac. Tel. Co.* v. *Barnes,* 64 N. Y. 385, 21 Am. Rep. 621; *McKecknie* v. *Ward,* 58 N. Y. 541, 17 Am. Rep. 281. In *Boone* v. *Jones,* 54 Iowa, 699, 37 Am. Rep. 229, 2 N. W. Rep. 987, 7 N. W. Rep. 155, it was held that, "in an action on a county treasurer's bond, the principal's accountings and settlements made in pursuance of law are conclusive against him and his sureties." The court cites, with approval, *McCabe* v. *Raney, Baker* v. *Preston, Morley* v. *Metamora,* and *Chicago* v. *Gage, supra.* On a rehearing the decision was adhered

to. The authority of *Baker* v. *Preston* has been questioned and the decision criticised. *State* v. *Rhoades,* 6 Nev. 352, and *State* v. *Newton,* 33 Ark. 276; and see note to *Boone Co.* v. *Jones,* 37 Am. Rep. 234. In *State* v. *Grammer,* 29 Ind. 530, the court, of *Baker* v. *Preston,* say: "We regard the reasoning in that case as entirely satisfactory, and we know of no case holding a contrary doctrine." We are satisfied that the weight of authority and the better reason sustains that case and *Chicago* v. *Gage,* and that the law is that both the principal and sureties are concluded by the report of the principal, made according to law, as to the amount of money in his hands. We therefore see no error in the record.

The judgment is affirmed.