(16 Misc. Rep. 621.)

### ROTHSCHILD et al. v. FRANK et al.

(Supreme Court, Trial Term, New York County. April 27, 1896.)

PRINCIPAL AND SURETY—RELEASE OF SURETY.
  The sureties on the bond of a trustee, conditioned for the faithful performance of the trust, which was evidenced by a certificate of the trustee made a part of the bond, the certificate reciting that the trustee held certain moneys in trust for the beneficiaries, and that such moneys were invested in mortgages on realty, are not liable where, at the time they executed the bond, the fact that the moneys were not so invested was not disclosed to the sureties, though the beneficiaries were unaware of such fact.

Action by Minnie Rothschild and another, by guardian, against Herman Frank and another. Judgment for defendant Moritz Brockman.

W. H. Law, for plaintiffs.
Myers & Bronner, for defendant Brockman.

McADAM, J. The action is on a bond under seal, executed by the defendants June 28, 1894, whereby they acknowledged themselves to be held and firmly bound jointly and severally unto the plaintiffs in the sum of $5,000, upon condition that if Herman Frank, one of the obligors, "shall and will faithfully in all things discharge his duties as trustee under the trust referred to and described in the certificate of the above-bounden Herman Frank, a copy of which is annexed, marked 'Schedule A,' and render a true and just account of all moneys and property received by him and of the application thereof, then this obligation to be void." Schedule A referred to, and made

part of the condition, is a certificate signed by Herman Frank, in which he declares that, during the lifetime of one Clara Feldman, there were intrusted to him by her various sums of money which, at her request, he had kept invested for her on bond and mortgage, and that prior to her death she gave him the same in trust to invest on interest-bearing securities, and to pay the income thereof to the plaintiffs. It concludes with the following declaration:

"And I do further certify and declare that said various amounts of money so intrusted to me at the time of the death of said Clara Feldman, amounting to $4,875, which I have at present invested on bond and mortgage on two pieces of property in Brooklyn, to wit, on premises corner of Plymouth and Gold streets, on which there are due $1,500, and on premises in Duffield street, in the city of Brooklyn, on which there are due $3,500; said mortgages bearing interest 5 per cent. per annum, payable semiannually, in January and July of each year."

In April, 1887, the moneys were left with Frank for investment. No new consideration was advanced; so that no element of equitable estoppel enters into the question. Brockman alone defends, alleging that he was induced to sign the obligation by the fraudulent representations of his co-defendant that the certificate annexed to and forming part of the condition of the bond was true, and that the moneys intended to be secured by the obligation in suit were in fact invested as stated in the certificate. It is conceded that every statement in said certificate as to the investment of said money, and as to the existence of bonds and mortgages as security therefor, was untrue; and that Frank, instead of investing said money, had appropriated the same to his own use, in fraud of the said Clara Feldman and of the plaintiffs, the beneficiaries of her trust.

It has been urged that the fraud of Frank in inducing Brockman to become bound is no defense to the latter. 1 Bigelow, Fraud, 254; Brandt, Sur. §§ 406, 414; Machine Co. v. Farrington, 82 N. Y., at page 127; Page v. Krekey, 137 N. Y. 307, 33 N. E. 311; Powers v. Clarke, 127 N. Y. 417, 28 N. E. 402; and kindred cases. There might be force in the contention if knowledge of the fraud were not imputable to the plaintiffs. But the declaration contained in Schedule A, made part of the condition of the bond, is in itself an active, living representation. See Telegraph Co. v. Barnes, 64 N. Y., at page 387. There can be no substantial difference between an oral misrepresentation made or sanctioned by a creditor and a written misrepresentation made the basis and condition of the contract on which he seeks to recover.

Burge, on Suretyship (page 219) says:

"The principle to be drawn from the cases we take to be this: that if, with the knowledge or assent of the creditor, any material part of the transaction between the creditor and his debtor is misrepresented to the surety, the misrepresentation being such that, but for the same having taken place, either the suretyship would not have been entered into at all, or, being entered into, the extent of the surety's liability might be thereby increased, the security so given is voidable at law on the ground of fraud."

Frank, by his certificate, made part of the condition of the obligation, and therefore inseparable from it, represented that the very moneys the obligation was given to secure had been invested for the

benefit of the plaintiffs on bonds and mortgages on property in Brooklyn. Presumably, the plaintiffs knew whether this declaration was true or not. Brockman contracted solely with reference to the existence of the mortgage securities, as the obligation he signed on its face discloses. His obligation to the plaintiffs was in effect that Frank would discharge his duties as trustee with reference to those securities, and would account for the bonds and mortgages, or in their absence, for the moneys which they represented. The obligation of the surety is literally a strict one to answer for the production of the bonds and mortgages, and based upon the consideration contained in the certificate made part of the bond that the moneys were then invested in such bonds and mortgages. The case is therefore one of mutual representation of things, or of a mistake on the one part, with circumstances tantamount to fraud if advantage is sought to be taken of the mistake by the other contracting party. See Haviland v. Willets, 141 N. Y. 35, 35 N. E. 958; Jackson v. Andrews, 59 N. Y. 244. Negligence cannot be attributed to Brockman without imputing it to the obligees, who ought to have known better than he what investment their trustee had made for them. The obligation was made and accepted upon the evident understanding that the bonds and mortgages were existing securities, whereas in fact they were nonexistent, and the contract based upon their supposed existence is unenforceable. Thus, if A. sells his horse to B., and it turns out that the horse was dead at the time, though the fact was unknown to the parties, the contract is necessarily void. 2 Kent, Comm. 468; Carpenter v. Stevens, 12 Wend. 589. And the rule is in no way limited by the nature of the subject-matter involved, but extends to anything capable of existence, and which the contract implies has an existence, at the time it is made. Dexter v. Norton, 47 N. Y. 62; Kein v. Tupper, 52 N. Y. 550. "In cases of mutual mistake going to the essence of the contract, it is not necessary that there should be any presumption of fraud. On the contrary, equity will often relieve, however innocent the parties may be. Thus, if one person should sell a messuage to another, which was at the time swept away by a flood or destroyed by an earthquake, without any knowledge of the fact by either party, a court of equity would relieve the purchaser, upon the ground that both parties intended the purchase and sale of a subsisting thing, and implied its existence as the basis of their contract. It constituted, therefore, the very essence and condition of the obligation of their contract. * * * The same principle will apply to all other cases where the parties mutually bargain for and upon the supposition of an existing right." Story, Eq. Jur. §§ 142, 143. And see Am. & Eng. Enc. Law, 897; Fry, Spec. Perf. § 497. Where both parties to a contract were laboring under a mistake concerning the subject-matter, the contract will not be enforced. There is really no contract, for there was no intelligent consent. Pom. Cont. §§ 243, 250; Metc. Cont. 30; Pol. Cont. 414, 417, 418. Indeed, where the obligation is induced by a mistake common to both, without which mistake the agreement would not have been made, it is inoperative and void. Chit. Cont. (11th Am. Ed.) 1030. The question resolves

itself into whether the mistake is as to the substance of the whole consideration, going, as it were, to the essence and root of the matter, for in such a case there is no contract. Kerr, Fraud (Am. notes, by Bump) 58–60; Russell v. Brownell, 20 Wkly. Dig. 504. The defense, though equitable, is as available as one purely legal. Code, §§ 507, 3339. The legislature intended "that all controversies respecting the subject-matter of the litigation should be determined in one action, and the provisions are adapted to give effect to that intent." Dobson v. Pierce, 12 N. Y., at page 165. The relief which the defendant might as plaintiff obtain in equity is attainable here by way of defense or counterclaim. Pitcher v. Hennessey, 48 N. Y., at page 422.

That all the parties were imposed upon by Frank is clear; that Brockman was innocent of any participation is equally clear; and, however innocent the creator of the trust or the plaintiffs may have been, they cannot profit by the fraud of their chosen trustee, when the misrepresentation establishing the fraud appears upon the face of the obligation they seek to enforce. It follows that there must be judgment for the defendant.