BERNE A. PYRKE, as Commissioner of Agriculture and Markets of the State of New York, Appellant, Respondent, *v.* STANDARD ACCIDENT INSURANCE COMPANY, Respondent, Appellant.*

Third Department, December 30, 1931.

* Revg. 141 Misc. 186, 442.

*Henry S. Manley*, for the plaintiff.

*Samuel Saltzman* [*Jay Leo Rothschild* of counsel], for the defendant.

RHODES, J. The appeal brings up for review an order of Mr. Justice MCNAMEE changing the place of trial of the action from Albany county to New York county; also an order made by said justice denying plaintiff's motion for judgment on the pleadings to strike out the answer as sham and frivolous and to strike out the second and third separate defenses of said answer. The cross-appeal of the defendant brings up for review the provision of said order striking out the first separate defense in said answer. The plaintiff now urges, however, as to the order concerning the pleadings, that it should be reversed only in so far as it refuses to strike out the third separate defense. So we now have before us only the questions concerning the order changing the place of trial and those provisions of the order which struck out the first separate defense of the answer and sustained the third separate defense.

The action is brought by plaintiff to recover upon two separate bonds given by the defendant under the provisions of article 20 of the Agriculture and Markets Law prerequisite to the issuing of the license provided for in said article authorizing Olivit Bros., Inc., a domestic corporation doing business in New York city, to conduct the business of receiving and selling farm produce on commission. The complaint contains two separate causes of action, one seeking to recover under the bond issued for the year 1928; the other upon the bond issued for the year 1929. Each cause of action sets forth the giving of the bond, the issuing of the license, the consignment for sale on commission of merchandise to said Olivit Bros., Inc., the disposal of said merchandise, the amount due therefor and the subsequent bankruptcy of said commission merchant, the failure of the consignors to receive the amount due for their merchandise, with other necessary and appropriate allega-

tions, with a demand for judgment for the amount due said consignor creditors.

The answer sets up as a first separate defense in substance that by the bond in question the defendant guaranteed the fidelity of said commission merchants; that as a matter of law and fact the real obligees thereunder were the consignors; that said commission merchants failed in their duty to the consignors; that said consignors failed to notify the Commissioner of Agriculture thereof during the time when said commission merchants were financially solvent; that as the result of said delay the defendant was deprived of the means to diminish the risk and hazard and to terminate its exposure to further liability and that thereby the defendant has been wholly exonerated and discharged from further liability.

The third separate defense alleges that said Olivit Bros., Inc., is still in existence; that said corporation and its trustee in bankruptcy are within the reach of the ordinary process of the court; that there is a defect of parties herein because neither said corporation nor its trustee is a party to this action.

The questions thus presented here require a determination of the obligation assumed by the defendant under the bonds in question. Defendant insists that said bonds were conditioned solely upon the fidelity of the principal for an honest accounting and relies on the rule that unreasonable delay on the part of the obligee to act or to give notice would discharge the obligor, citing *Atlantic & Pacific Telegraph Co.* v. *Barnes* (64 N. Y. 385); *Emery* v. *Baltz* (94 id. 408). Here, however, the bond is given pursuant to and for the purposes required by the statute. While the bond by the law is denominated a fidelity bond, such law then proceeds with some particularity to define the liability imposed thereunder. The obligation assumed therefor does not necessarily depend upon its appellation as a fidelity bond, but is measured by the liability expressly stated and defined in and by such statute. By section 246 of the Agriculture and Markets Law it is provided that an applicant for a license shall " deliver to the Commissioner a fidelity bond * * * in the sum of three thousand dollars to secure the honest accounting of the consignor of the moneys received or due and owing by said commission merchant from the sale of farm produce sold on commission," and that " the Commissioner may bring an action * * * against the principal and sureties for the recovery of any *such moneys*." By section 247 the Commissioner has power to investigate the affairs and transactions of any such commission merchant, including the failure to make proper and true accounts and settlements at prompt and regular intervals, or the failure to make payments for goods received or other alleged

injurious transactions. It then provides that in case of failure by the commission merchant to pay the consignor creditors for farm produce received from said consignors to be sold on commission, or in case of the bankruptcy of, or the revocation of the license of said commission merchant, or the discontinuance of the business of such commission merchant for any other cause, the Commissioner shall proceed to ascertain the names and addresses of all the consignor creditors, together with the amounts due and owing to them by such commission merchant, and it then provides that the Commissioner shall " then bring an action on the bond which has been filed in the department by said commission merchant." It will thus be seen that the statute provides for different contingencies: (a) Failure by the commission merchant to pay creditors for farm produce received; (b) bankruptcy of the commission merchant; (c) revocation of his license; (d) or the discontinuance of his business for any other reason. On the happening of any of said contingencies the Commissioner is to ascertain the amount " due and owing " to the consignors by such commission merchant, and he *shall then bring an action on the bond.* The contingencies enumerated seem to contemplate liability not only for money actually received and due and owing by the commission merchant, but in any case where farm produce has been received on commission by said merchant, or where he has become bankrupt, his license revoked or he has discontinued business.

Briefly, the statute seems designed within the limit named in the bond to measure the extent of the liability by the amount of claims. The amount of these claims was presumptively established by the certificate of the Commissoner after the prescribed investigation and the amount of these claims is what the Commissioner is to sue for when he brings his action on the bond. It is clear, therefore, that defendant's obligation embraces more than liability for an accounting for moneys actually received by the commission merchant. So far as an action on the bond is concerned, there is no privity of relation between either the surety and the consignor creditors, or the Commissioner and the consignor creditors. The relation established by law is between the commission merchant as principal on the bond, the defendant surety and the Commissioner. The statute prescribed no notice to be given to the surety either by the consignors or by the Commissioner. No action is required by the Commissioner until after a default has occurred. He is then to ascertain the amount of the default established presumptively by his certificate, and then, and then only, is he required to commence an action on the bond. It will thus be seen that no obligation is imposed by the statute requiring the giving of prior

notice to the surety. If any such obligation there be, it must be found in the general principles of law applicable to sureties and guarantors. The design of the statute is to require the surety to make good the claims against the commission merchant to the amount of the bond. By section 246 the amount recovered on the bond is to be used to pay *the claims* of the consignor creditors. Obviously these claims are the claims ascertained and set forth in the certificate of the Commissioner as provided in section 247. Section 246 provides that the act shall apply to all *claims unliquidated* at the time of the taking effect of the act. Certainly this is not limited to claims for money actually received by the commission merchant; it refers to all claims of the nature specified in the act. The bond is to secure the honest accounting to the consignor of *moneys received* or *due and owing* by such commission merchant.

There is another persuasive reason for thus construing the surety's liability. By section 246 it is required that the bond be executed by the principal and surety. Quite obviously the obligation imposed upon the principal under his bond was intended to cover all the duties imposed upon him by the statute. The obligation of the principal being thus broad, the obligation of the surety created by the same instrument must be equal.

If these conclusions are correct, then the defendant was not entitled to notice from the consignors and the failure of said consignors to give such notice did not release the defendant from liability. There is no allegation in the first separate defense that the Commissioner failed to act promptly. The only allegation is that he gave no notice prior to the bankruptcy of the commission merchant. There is no allegation that he knew or ought to have known of the defaults of the commission merchant prior to its bankruptcy. The first defense was, therefore, insufficient and was properly stricken out.

The action was properly brought without joining either the commission merchant or its trustee in bankruptcy. By the terms of the bond the principal and surety are jointly and severally bound. It is the obligation of the surety which is here sought to be enforced, not the obligation of the principal. While the obligation of each is equal in amount, the capacity in which each is liable is separate and distinct. The principal is, therefore, not a necessary party. While the statute allows joining both as parties, this is permissive, not mandatory. If the defendant desires to have the principal brought in, it has its remedy under section 193, subdivision 2, of the Civil Practice Act.

The third separate defense is, therefore, insufficient and should be stricken out.

The justice at Special Term construed the statute as making mandatory the bringing of the action in the county of New York where the commission merchant had its place of business, and ordered accordingly. Seemingly this is error. Section 182 of the Civil Practice Act provides that actions, including one of this nature, must be brought in the county in which one of the parties resides at the commencement thereof. Section 20 of the Agriculture and Markets Law provides that the principal office of the department shall be in the city of Albany in rooms to be designated by the Trustees of Public Buildings as provided by law. His residence as an official is, therefore, in the city and county of Albany, and the venue of this action was properly laid in that county. (*Stoddard* v. *Manzella*, 207 App. Div. 519.)

Section 246 of the Agriculture and Markets Law provides that the Commissioner " *may* bring an action * * * in the county in which is situated the place of business of the licensee * * *." In view of the provisions of said section 182 of the Civil Practice Act and the decision last cited, this provision of section 246 of the Agriculture and Markets Law is to be regarded as permissive only and as enlarging the power of the Commissioner so as to permit him to bring the action in the county of his official residence or in the county where the commission merchant has his office.

The order changing the place of trial should, therefore, be reversed and the motion denied.

The order denying the motion to strike out the third separate defense should be reversed and the motion granted, and the order in all other respects affirmed.

All concur, except HILL, J., who dissents and votes to affirm the orders.

Order changing place of trial reversed on the law, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.

Order denying motion to strike out the third separate defense reversed on the law, and motion granted, and the order in all other respects is affirmed, without costs.