LANCASHIRE INSURANCE COMPANY v. MARIA J. CALLAHAN.[1]

May 19, 1897.

Nos. 10,587—(131).

Principal and Surety—Admissions of Principal as Evidence—Res Gestæ.

Where the admissions of the principal are made in the course of the performance of the business for which the surety is bound, so as to become a part of the res gestæ, they are evidence against the surety.

Fidelity Bonds—Notice of Dishonesty.

Where there is a continuing suretyship for the faithful discharge of his duties by a servant, if the master discovers that the servant has been guilty of dishonesty in the course of the service, and continues him in such service, without the consent of the surety, express or implied, the latter is not liable for any losses arising from the dishonesty of the servant during his subsequent service. But this rule has no application to cases of mere breaches of duty or contract obligations on the part of the servant, not involving dishonesty on his part, or fraud or concealment on the part of the master.

Same—Sufficiency of Evidence.

Evidence considered, and *held*, that it was not sufficient to support a proposed finding to the effect that the plaintiff continued its agent, for whose fidelity the defendant's testator was surety in its service, after it discovered that he was dishonest in such service.

Appeal by defendant from a judgment of the district court for St. Louis county against her, as surviving executrix of the will of Jonathan G. Callahan, deceased, for $696.72, entered pursuant to the findings and order of Moer, J. Affirmed.

*H. F. Greene*, for appellant.

The surety upon a bond of an insurance agent is released where such agent, before the default is complained of, had committed other

[1] Reported in 71 N. W. 261.

faults of the same kind for which the company might have dismissed him, but the company, knowing thereof, omitted to inform the surety and continued the agent in service, and the defaults complained of were committed during such continuance. British v. Luxton, 9 Manitoba, 169; Saint v. Wheeler, 95 Ala. 362; Sanderson v. Aston, L. R. 8 Exch. 73; Roberts v. Donovan, 70 Cal. 108; Charlotte v. Gow, 59 Ga. 685; Cuff v. Newark, 35 N. J. L. 33; Atlantic v. Barnes, 64 N. Y. 385; United States v. Salmon, 91 Hun, 535. Where the suit is against the sureties alone, the admissions and declarations of the principal which are of the res gestæ and which are made after there had been a breach of the contract on which the surety is liable, are not admissible in evidence. White v. German, 9 Heisk, 475; Kellum v. Clark, 97 N. Y. 390; Stetson v. City, 2 Oh. St. 167; Lee v. Brown, 21 Kan. 458.

*Doolittle & Shoemaker* and *Brooks & Hendrix,* for respondent.

The sureties were not released. Watertown v. Simmons, 131 Mass. 85; North British v. Lloyd, 10 Exch. 523; Lee v. Jones, 4 Am. Law Reg. N. S. 487; Hamilton v. Watson, 12 Clark & Finn. 109; Trent v. Harley, 10 East, 34; London v. Buckle, 4 Moore, 153; Albany v. Vedder, 14 Wend. 166; Looney v. Hughes, 26 N. Y. 514; McKecknie v. Ward, 58 N. Y. 541; Wildes v. Savage, 1 Story, 23; Douglass v. Reynolds, 7 Pet. 113; Union v. Coster, 3 N. Y. 203; Paige v. Parker, 8 Gray, 211; Whitney v. Groot, 24 Wend. 82; Atlantic v. Barnes, 64 N. Y. 385; Morris v. Van Vorst, 21 N. J. L. 100; Richmond v. Kasey, 30 Grat. 218; Remington v. Kezertee, 49 Wis. 409; Home v. Holway, 55 Iowa, 571; Phœnix v. Findley, 59 Iowa, 591; Pittsburg v. Shaeffer, 59 Pa. St. 350.

START, C. J. This is an action upon a bond to the plaintiff given by the defendant's testator as surety for William A. Teall. Trial by the court without a jury, and judgment for the plaintiff, from which the defendant appeals.

Teall was the agent of the plaintiff at Eau Claire, Wis., and the bond was conditioned for the faithful performance of his duties as such agent, which were to keep correct accounts of the business of his agency, to make regular reports of it, to pay over moneys collected by him, and to deliver up all money and property of the plain-

tiff in his possession at the termination of his agency. The complaint alleged, and the trial court found as a fact, that Teall, as such agent, between February 2 and August 10, 1893, collected and received the sum of $822.30 belonging to the plaintiff, of which sum he failed to pay to it $510.59, and has not paid the same, although duly demanded on August 23, 1893. The answer denied these allegations of the complaint, and alleged as a second defense that the plaintiff knew on April 26th that Teall was a defaulter, and had misappropriated its money in the sum of $164.50, but did not notify the surety of such fact, and continued Teall in its employment with knowledge of such fact; that more than $300 of the money which he failed to pay over was received by him after the plaintiff knew of his previous defalcation. The defendant's contention here is (a) that the finding of the trial court as to the amount of Teall's shortage is not sustained by any competent evidence; (b) that the undisputed evidence establishes the second defense alleged in the answer.

1. The evidence to establish the amount of money belonging to the plaintiff received and not paid over by Teall as such agent consisted of the admissions of Teall to a special agent of the plaintiff in connection with an examination of Teall's books and accounts relating to his business with the plaintiff as its agent, showing policies issued, premiums collected, and the amount due to the plaintiff, and oral evidence to the effect that the books, accounts, and papers connected with and kept by Teall in the course of the business of his agency showed that he was, on August 23, 1893, indebted to the plaintiff in the sum of over $500. There was no exception to the admission of any of this evidence. It was objected to, and "received subject to objection." This was insufficient to enable the defendant to raise any question as to competency or admissibility of the evidence. The defendant should have then and there excepted to the ruling of the trial court in receiving the evidence subject to objection, or reserved an exception to such ruling as the trial court might make on the objection. Kumler v. Ferguson, 22 Minn. 117.

The secondary evidence, then, as to what the books and reports showed, must be given the same probative force as the books themselves. The mere admission of Teall, disconnected with everything else, although received without objection, would not have any ten-

dency, as against the defendant, to prove the state of the accounts between him and the plaintiff. But this examination of the books and accounts of Teall's agency was while he was still the agent of the plaintiff, and his admissions accompanied such examination, and they and the books, accounts, and reports made in the performance of the business of his agency were admissible against the surety as a part of the res gestæ. 1 Greenl. Ev. § 187; 2 Brandt, Sur. § 627; Wood, Prac. Ev. § 176.

The evidence was sufficient to support the findings of the trial court. The plaintiff offered as general evidence a judgment obtained by it against Teall for his shortage, which was excluded on the defendant's objection. It was then offered for the purpose of showing that the amount which Teall admitted to be due had not been paid, and it was received over the defendant's objection and exception. Conceding, without so deciding, that the judgment as against the surety was evidence only of its recovery, it is clear that its reception for the specific purpose for which it was received was not reversible error. There was no issue as to the payment of the plaintiff's demand against Teall; no claim that it had been paid was pleaded or made by the defendant. The defendant could not have been injured by the reception of incompetent evidence to prove a conceded fact.

2. This brings us to the second defense made by the defendant. The law as to this defense is that, where there is a continuing suretyship for the faithful discharge of his duties by a servant, if the master discovers that the servant has been guilty of dishonesty in the course of the service, and thereafter continues him in such service, without notice to and the assent of the surety, express or implied, to such course, the latter is not liable for any loss arising from the dishonesty of the servant during his subsequent service. But this rule has no application to cases of mere breaches of duty or contract obligations on the part of the servant not involving dishonesty on his part, or fraud or concealment on the part of the master. 2 Brandt, Sur. § 423; Home v. Farrington, 82 N. Y. 121; Watertown v. Simmons, 131 Mass. 85; Charlotte v. Gow, 59 Ga. 685; Richmond v. Kasey, 30 Grat. 218; Saint v. Wheeler, 95 Ala. 362, 10 South. 539.

The defendant moved the trial court to amend its findings of fact, and make certain findings as to the defense that the surety was dis-

charged. The motion was denied on the ground that the proposed findings were immaterial. This ruling is assigned as error, and the claim made that the court should have found as requested. We have, then, the question: Was the evidence sufficient to justify the trial court in finding the facts which would support the conclusion of law that the surety had been discharged? We answer it in the negative. The defendant concedes that the only evidence to support his proposed findings is a letter from the plaintiff's assistant manager to Teall, dated April 26, 1893, which is in these words:

"Herewith copy of your account current ending with February, which shows a balance due of $164.50. I have written you previously regarding this balance, and, as we find it necessary to close our February account, I have this day made draft on you, which I trust will be promptly honored. It seems to be a hard matter for you to settle your balances. What appears to be the difficulty? Is it on account of slow collections, or that you have your surplus funds invested so that you are not in position to make advances, and extend the necessary courtesy to customers? We do appreciate prompt remittances. It seems that you never furnish us with monthly accounts. These are essential, and won't you please do so in future? We have to make up your account as best we can from your dailies and cancellations and it is a great inconvenience."

This letter falls short of bringing this case within the rule we have stated, to the effect that it was necessary for the defendant, in order to establish the defense, to show that Teall had actually received money belonging to the plaintiff, and that it had notice thereof, and that his failure to pay it involved dishonesty on his part. It was not sufficient that the plaintiff only knew that Teall was in arrears in his accounts, or derelict in not making his reports. Now, this letter does not suggest moral turpitude or want of integrity on the part of Teall, but rather a want of diligence and promptness in the discharge of his duties. It negatives any knowledge on the part of the plaintiff that he was dishonest in its service, or was guilty of embezzling its money. It impliedly asserts that the money for premiums on policies issued during February was past due as between plaintiff and Teall, and that payment of the balance had been previously requested. It also assumes that the money had not in fact been paid to him, but that he had, in accordance with the usual custom, extended credit to par-

ties to whom he had issued policies, and that the reason he was in arrears was either that collections were slow, or that his own funds were so invested that he could not make advances for his customers whom he had trusted for their premiums. Other than this letter, there is no evidence that the plaintiff knew that Teall had actually collected its money prior to August 23, 1893, when its special agent examined his books, and he admitted his defalcation, of which the surety was notified within a week thereafter. The letter was not sufficient to justify the proposed findings.

Judgment affirmed.