## ÆTNA INDEMNITY CO. v. FARMERS' NAT. BANK OF BOYER-TOWN, PA.

(Circuit Court of Appeals, Third Circuit. April 20, 1909.)

No. 40, October Session, 1908.

1. INSURANCE (§ 285*)—FIDELITY INSURANCE—BOND OF BANK CASHIER—MIS-REPRESENTATIONS AS TO PREVIOUS ALLEGED DISHONEST CONDUCT.

Where, in the application to an indemnity company by a bank for a bond indemnifying such bank against loss by reason of the dishonesty or bad faith of the cashier, a. certificate by the officers of the bank that the cashier, who had been in the service of the bank for a number of years, had at all times, so far as known, faithfully and satisfactorily performed his duties, and to the best of said officers' knowledge and belief had given satisfaction in his personal conduct and in the performance of his duties, and had kept and rendered his accounts correctly and without default, no reason being known why his bond should not be renewed, the assurances so given are material, and if untrue to the knowledge of the officers of the bank, or if made without proper effort on their part to inform themselves. thereon, the bond is invalid, and cannot be enforced.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 657; Dec. Dig. § 285.*]

2. INSURANCE (§ 668*) — FIDELITY INSURANCE — AVOIDANCE OF CONTRACT FOR MISREPRESENTATION—JURY QUESTION.

Statements in a certificate made by the president of a bank to a bonding company with an application on which the company executed a bond indemnifying the bank against loss or damage resulting from the dishonesty of its cashier, and in a second certificate for a renewal, that the cashier had previously "faithfully and satisfactorily performed his duties," and had "given satisfaction in his personal conduct, * * * and kept and rendered his accounts correctly and without default," although to the knowledge of the president and directors he had previously allowed a customer to make large overdrafts contrary to instructions and similar to subsequent overdrafts by the same customer which were made the basis of action on the bond, did not constitute knowing and fraudulent misrepresentations which avoided the bond as matter of law, where there was ground for the belief on the part of the officers that such acts were merely errors of judgment and not dishonest, as they afterward proved to be, and the fact that they retained the cashier in his position tended to show that they did so believe.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1735; Dec. Dig. § 668.*]

3. INSURANCE (§ 285*)—BOND OF BANK CASHIER—WARRANTY AS TO PREVIOUS CONDUCT—BREACH OF WARRANTY—KNOWLEDGE WHEN NOT MATERIAL.

Where a fact is warranted to be true, it is material; and it does not matter, therefore, ordinarily whether or not the party had knowledge. Its truth is affirmed, and, if it turn out to be otherwise, a contract based upon it is invalid, at least where it is so stipulated. Where, therefore, in a bond indemnifying a bank against the dishonesty and bad faith of a cashier, it was warranted that he had discharged his duties in good faith (mere negligence or error of judgment not being considered) and with honesty so far as the bank had knowledge, if this was not true, there was a breach of warranty by which the bond, those being its terms, would be avoided.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 657; Dec. Dig. § 285.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. INSURANCE (§§ 285, 668*)—QUALIFIED WARRANTY, AS FAR AS THERE IS KNOWLEDGE—KNOWLEDGE BY OFFICERS OF CORPORATION—JURY QUESTION.

But where the warranty was not absolute, but qualified, so far as the party, a bank, had knowledge, and by a further clause in the bond the knowledge required to avoid was the knowledge of the board of directors or of an executive officer, such as the president, who was receiving a salary and was active in the affairs of the corporation, it must have been known to the president or board of directors that the cashier was in fact dishonest; and whether they so knew, or whether they ought to have known, that the acts of the cashier were dishonest, was for the jury.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1735; Dec. Dig. §§ 285, 668.*]

5. INSURANCE (§ 285*)—AVOIDANCE OF CONTRACT FOR BREACH OF WARRANTY—FIDELITY INSURANCE.

A warranty by an employer corporation in a fidelity bond indemnifying it against loss by the dishonesty of an employé that such employé has while in the service of the employer discharged his duties in good faith and with honesty "so far as the employer has knowledge," although it appears that he had not in fact done so, does not invalidate the bond, unless it is shown that the officers, whose knowledge was by the bond made that of the corporation, had knowledge of such fact when the bond was executed.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 657; Dec. Dig. § 285.*]

6. INSURANCE (§ 332*)—FORFEITURE FOR BREACH OF CONDITION SUBSEQUENT—FIDELITY INSURANCE.

A provision in a fidelity bond indemnifying a bank against dishonesty of its cashier that it should be void if the bank failed to promptly notify the insurer in case any act of dishonesty came to its knowledge did not become operative because the officers or directors of the bank learned of acts of the cashier which were in fact dishonest if they were not known to be so at the time.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 875, 875½; Dec. Dig. § 332.*

Fidelity insurance, see note to American Credit Indemnity Co. v. Wood, 19 C. C. A. 273.]

7. TRIAL (§ 279*)—INSTRUCTIONS—EXCEPTIONS.

The ground of an exception to an instruction or the refusal of an instruction must be stated at the time in order that the court shall have its attention directed to the error alleged to have been committed and may correct it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 690; Dec. Dig. § 279.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Gustavus Remak, Jr., for plaintiff in error.

Albert Moise and Alexander Simpson, Jr., for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. This was an action by the Farmers' National Bank of Boyertown, Pa., on a bond given by the Ætna Indemnity Company to indemnify the bank for loss or damage by reason of the dishonesty of its employés, the particular loss which was the basis of the action being occasioned by the delinquencies of Morris L.

Hartman, the cashier, with respect to transactions with one D. C. Hillegass, a customer of the bank, who had dealt with it extensively for a long number of years. The bond was originally given April 30, 1906, for the term of one year, but was continued in force for another by a renewal receipt, upon payment by the bank of the required premium. The items of loss claimed by the bank consisted of overdrafts allowed by Hartman to Hillegass, and worthless bonds accepted from him as collateral, after positive instructions by the directors not to do so. The jury gave a verdict for the bank for $17,766.40, made up of overdrafts subsequent to the date of the bond, amounting to $11,721.07, and $5,500 of bonds, which have been spoken of, with $545.33 of interest added. The indemnity company deny liability, and claim that a verdict should have been directed on the ground that the bond was invalid, because it was obtained, as was the renewal, by material misrepresentations, and also because of a breach of warranty, by which, by express stipulation, it was to be avoided; or, if this is not sustained, that proper instructions were not given touching these questions. Particular items of loss are also contested because of the failure of the bank, within a reasonable time after their occurrence, to give notice of the practices of the cashier which are set up, the dishonest character of which, as it is said, was manifest, the indemnity company, by the terms of the bond, being relieved as the result from liability for losses thereafter arising. Not altogether consistently with this, it was maintained at the trial that the acts of the cashier were not dishonest, but were merely mistakes of judgment, against which the company did not indemnify. But except incidentally, by way of argument—that that which was not considered dishonest at the time, is not to be considered dishonest now, the bank otherwise being affected with notice, and the bond avoided—this seems to have been abandoned. The questions which are so presented will be taken up in their order.

The bond in suit is one of high class indemnity, demanded by modern business standards, and is not simply against embezzlement or misappropriation, but for the larger liability for dishonesty or bad faith of employés, by which financial loss is experienced. As with respect to all agreements of such character, the utmost good faith is called for in obtaining it, and misrepresentation in a material point is ground for avoidance. Application for the bond in suit, although made by the cashier, was authorized by the bank, and the bond was issued directly to it, as was the renewal, the bank in each case paying the premium, and the obligation thus being of its own procuring. Attached to the application was a so-called "employer's certificate," executed by the president on behalf of the bank, wherein it was stated that the applicant, the cashier, had been in the service of the bank for 20 years, and had "at all times, so far as known, faithfully and satisfactorily performed his duties"; and that his accounts were last examined April 7, 1906—about three weeks before that—by the national bank examiner, and found correct to date in every particular. At the time of the renewal, a year later, there was also a further certificate, similarly executed by the president, to the effect that, for the year then ending, Hartman had been continuously engaged in the serv-

ice of the bank, and to the best of his [the president's] knowledge and belief had given satisfaction in his personal conduct and in the performance of his duties, and had kept and rendered his accounts correctly and without default, and that no reason was known why his bond should not be renewed; that his accounts had been supervised and checked, and were last examined and audited March 14, 1907, by the examining committee, by whom they were found to be correct. It is contended that both the president and the directors had knowledge at the time of practices by Hartman, in the interest of Hillegass, which were at variance with these statements, in the face of which there can be no recovery.

There can be no question that the assurances so given were material, and that the bond was obtained and renewed on the strength of them. If, therefore, they were untrue to the knowledge of the officers of the bank, or were made without proper effort on their part to inform themselves, the bond is not enforceable. It cannot be denied that the practices indulged in by the cashier, of which complaint is made, by which loss occurred, were known to the president, and some, if not all, of the directors; and they now realize their dishonest character, and that they ought not to have countenanced or condoned them. There is evidence, for instance, that in April, 1906, not long prior to the procuring of the bond and the giving of the first certificate, Hartman, in violation of the rules of the bank and the instructions of the directors, had permitted Hillegass to make large overdrafts, running into thousands of dollars, which, in the shape of dishonored notes and checks, he carried in his drawer among his cash items, not entering them on the books, as he should, and thus concealing them from the directors, in the same way that he did the subsequent overdrafts, which, on the ground of dishonesty, are the subject of the present action; and that, when this was discovered, Hartman was not only admonished but censured by the whole board, and expressly ordered not to let it happen again, nor accept anything from Hillegass for the future, except actual cash or certified checks—directions, the disregard of which resulted in the losses sued for; also that, contrary to the instructions of the directors, he had taken from Hillegass, as security for overdrafts, $10,000 worth of bonds of the same kind and character as the $5,500 worth which he later accepted for the same purpose, the loss on which also formed a part of the verdict. It is admitted that he should have been discharged for this, as soon as it was discovered; from which it is maintained that the certificate on which the bond was originally secured, as well as the one on which it was renewed and extended—that he had "faithfully and satisfactorily performed his duties," according to the one; and had "given satisfaction in his personal conduct * * * and had kept and rendered his accounts correctly and without default," according to the other—not only was not true, but could not have been affirmed with any regard for the facts as known to the directors, amounting to misrepresentation, which avoided the bond as well as the renewal.

But whatever argument of this kind could legitimately have been drawn from the evidence, and however the jury would have been jus-

tified in finding according to it, we are not prepared to say that it was so preponderantly one way that but one view could be taken of it, requiring the direction of a verdict for the defendant, as contended. Take the $10,000 bond transaction, for instance. While the directors, no doubt, were a good deal staggered by this when it was discovered, and expressed themselves pretty freely with regard to it, yet, to a certain extent, they ratified it in the end, by taking the bonds as collateral for a loan, which, even as the best way out of a bad bargain, they hardly would have done had they considered the conduct of Hartman as positively dishonest. Capable of explanation, as it was, as a matter of bad judgment merely, and evidently so regarded by the directors at the time, however differently they may now view it, they are relieved from the charge of having made a willful misstatement in the certificate, as argued. And the same is to be said as to the overdrafts allowed to Hillegass, which led up to this. It is true that they were kept off the books, and so concealed from the knowledge of the directors, which might well have aroused their suspicions and raised doubts in their minds as to the honesty of Hartman when it was discovered. And, looking back at the transaction, now that Hartman has confessed, and after they have become aware how, in other respects, the books were manipulated to cover up the way Hillegass was being favored, they may be prepared to admit that he ought to have been discharged on the spot, in which we agree with them; yet, the question being one of alleged misstatement and bad faith, we must look at it as it appeared at the time, and according to what was then known, and not as we now see and appreciate it, as to which the fact that the directors kept the cashier in his position goes to show that they did not regard his conduct as seriously reprehensible. It is to be remembered that the avoidance of the bond is asserted on the ground of misrepresentation knowingly made, amounting to fraud; as to which, it is not enough that the officers of the bank might, or even ought, to have realized what the conduct of Hartman amounted to. The fact is that they did not, as they all with one accord declare; and however their denial may have been drawn out under the leading of counsel, the jury have believed it, and we are not prepared to say that they were not entitled to do so. The certificates in question, undoubtedly, are strong; stronger by far than we know that they should have been; but no stronger than was held, in Fidelity Company v. Courtney, 186 U. S. 382, 22 Sup. Ct. 833, 46 L. Ed. 1193, not to invalidate a similar certificate, also given to obtain a fidelity bond, on the proof of equally questionable practices by a bank officer. In line with what is there said, Hartman having satisfied the directors, for the time being, as to what he had done, which was accepted and passed over, the certificate, that he had faithfully and satisfactorily performed his duties and given satisfaction personally—which referred, as it is to be noted, to his honesty, and not to his competency—was fulfilled to all intents and purposes. One of the defenses, indeed, set up at the trial, as already stated, was that, in all the things complained of, Hartman did not act dishonestly, as he must have, to entitle the plaintiff to recover, but only through incompetence, or by mistake of judgment, for proof of

which the knowledge and acceptance by the directors of what he did was relied on; a position entirely at variance with the one now taken, that it was so manifestly dishonest that they were bound to recognize it. Nor does this commit us to the converse. It does not follow, in other words, that, if what Hartman did before the giving of the bond was not dishonest or in bad faith, the same conduct afterwards must be similarly regarded. It is not claimed by the bank that his acts were not dishonest. They were; only the directors did not realize it, not knowing the facts in all their fullness, as they do now—thus freeing the certificate from being intentionally misleading. Nor can the assurances on which the bond was procured be regarded as recklessly given, thereby having the same avoiding effect as if made knowingly. Cooper v. Schlesinger, 111 U. S. 148, 4 Sup. Ct. 360, 28 L. Ed. 382. They were not made without regard for the truth, in other words, nor in the face of knowledge, but only under a mistaken view of the facts, or without complete acquaintance with them, or at least they are capable of this construction; which relieves them from any such imputation.

It is said, however, that the instructions of the court on this branch of the case were inadequate, if not misleading, in that the knowledge which would avoid the bond was limited to that which the president and directors thought was dishonest; and also in not squarely affirming certain points which asked the court to charge that, if Hartman had not faithfully and satisfactorily performed his duties, as stated in the certificates, or that, if the president had knowledge of acts of omission or commission in the dealings of Hartman with Hillegass, and they were done or omitted in bad faith, the verdict must be for the defendant. But the subject was fully covered in the general charge, and it is of no consequence, therefore, that the exact instructions asked for were not given—if, indeed, they could have been without error—the court having the right to choose its own way of disposing of the matter, provided that it did so correctly. "If the directors had knowledge," as it is there said, "of the transactions of Hartman, and they were of the same character as those which occurred after the bond went into effect on which they are claiming, and they knew them to be dishonest, they had no right to apply to the indemnity company, and, if they did apply and falsely stated the condition of affairs, they would have no right to recover. But it will be your duty to say," referring the question to the jury, "whether or not Hartman was acting dishonestly before the bond went into effect, and, if he was, whether the directors knew it; and if they did not know it, and the transaction was straightened out and securities taken for it—although they afterwards found them worthless—and the directors did not see enough of it or understand it sufficiently to regard it as dishonest, they could not be charged with having deceived the defendant company, and the bond would be good for any loss subsequently sustained during its life by reason of Hartman's dishonesty." This was an accurate presentation of the law applicable to the subject, to which no exception was or could be taken; in addition to which there was an affirmance of the defendant's seventeenth point to the effect that, if

the jury believed from the evidence that the officers and directors of the plaintiff company had knowledge before the date of the bond of acts and conduct on the part of the cashier which they considered a failure by him to discharge his duty as an employé in good faith and with honesty, the verdict should be for the defendant. Assuming, as we must, that the jury was guided by these instructions, it does not matter that points covering the same ground, however unexceptionable, were not referred to. Nor was there any error in qualifying the answers of the court to the fourteenth and fifteenth points, so as to confine them, so far as concerned the transactions referred to, to that which the directors considered to be dishonest, it being essential, as we have seen, that knowledge of the dishonesty of the cashier should be brought home to them; and an affirmance without this qualification would not have been justified. Much less could the court affirm the fourth, fifth, and sixth points, that the defendant was entitled to a verdict from the mere knowledge of the president, before the certificates were given or the bond executed, of acts of omission or commission on the part of Hartman which the jury thought were done or omitted in bad faith, regardless of the consideration that there may have been nothing at the time which so characterized them or disclosed that there was any such motive back of them.

It is said, however, that it is warranted in the bond that "each employé named in the schedule has while in the service of the employer discharged his * * * duties in good faith (mere negligence or error of judgment not being considered) and with honesty so far as the employer has knowledge"; and that, this not being true as to Hartman, there was a breach of warranty, by which, by its terms, the bond was avoided. Where a fact is warranted to be true, it is made material, and it does not matter, therefore, ordinarily, whether or not the party had knowledge. Its truth is affirmed, and, if it turn out to be otherwise, the contract based upon it is invalid, at least where so stipulated; and this would be the fate of the bond in suit if that was all there was to it. But it will be observed that the warranty here is not absolute, but qualified, "so far as the employer has knowledge"; and by a subsequent section:

"(20) In case the employer be a corporation, the knowledge of its board of directors or trustees, or of any executive officer, such as a president, vice-president, cashier, or assistant cashier of a bank, and corresponding officers of a savings bank or trust company, who shall receive a salary from the corporation and be active in its affairs shall be deemed to be the knowledge of the employer."

The knowledge, therefore, which would avoid, in a case such as the one in hand, must be that of the board of directors, as a board, and not individual members of it; or, if the knowledge of an executive officer, such as president, is relied on, he must receive a salary and be active in the corporate affairs. It may be that the latter qualification, from the connection, would more correctly apply to the officers of savings banks and trust companies only, and is not to be extended in other corporations to such general executive officers as a president. But if the matter is in doubt, it is to be resolved against the defendant, the bond in form being of its own making, however it may have orig-

inated. Upon this basis the knowledge of the president, whatever it was, is excluded in the present instance, there being nothing to show that he was active in the affairs of the bank within the meaning of the bond, and it not being pretended that he received a salary. This is not very material, the directors knowing pretty much all that was known to the president; but knowledge of president or directors having in any event to be shown, the same thing is to be said of it as was said with regard to the alleged misrepresentations. There was evidence from which knowledge might possibly have been found, but it was by no means so conclusive that a verdict could have been directed. The same argument is made here, as there, as to the allowance and concealment of overdrafts by Hartman, and the acceptance of bonds which proved worthless. It could not be asserted with any regard to the facts, as it is said, that he had performed his duties with honesty and in good faith to the knowledge of the board, in the face of the censure which they administered, and the admission now made that they ought to have discharged him. But the views with regard to this have been expressed above, and do not need to be enlarged upon. The cashier was not known to be dishonest, however much it may be that he ought to have been. Nor does censure necessarily imply bad faith, comporting equally as it does with neglect or incompetence. Indeed, as already intimated, the continuance of Hartman in his position goes to prove that, notwithstanding what had occurred, the directors still had confidence in him. And in response to the argument that they ought to have known of his dishonesty, which they had merely to look into the books to discover, it may be pointed out that he had so manipulated his accounts that even the bank examiner was deceived, and it could hardly be expected that the directors would be any better able to unravel them. It is to be remembered always that the question is not whether the acts referred to were in fact dishonest, as to which indeed there can be no controversy, notwithstanding that the defendant, as already stated, to avoid responsibility, endeavored to persuade the jury otherwise; but whether the directors knew, or ought to have known, that this was their character, as to which it is sufficient to say that this, as it had to be, has been disposed of by the jury.

But it is further said that it was expressly covenanted by the bank that if, at any time during the term for which the bond was given or any continuance thereof, there should come to its knowledge the fact that any employé for whom the indemnity company was bound was dishonest or had done anything in bad faith, and not through mere negligence or error of judgment, the bank would promptly notify the company of the fact, the failure to do which should relieve it from liability for loss thereafter arising. And it having come to the knowledge of the directors, as early as April 20, or possibly April 23, 1907, that Hartman was allowing Hillegass to overdraw his accounts in a way that is now charged to have been dishonest, and that he had also taken from Hillegass the $5,500 worth of bonds which proved worthless, recovery of which is sought upon the same basis, nothing in the way of overdrafts after that is collectible, the officers of the bank having failed to notify the indemnity company of these facts as they covenanted, until

demand was made upon the bond, on May 21, 1907, some 28 days afterward. It may be conceded that this was too late to meet the requirement of promptness if the case turned on that. National Surety Company v. Long, 125 Fed. 887, 60 C. C. A. 623; Ætna Indemnity Company v. Crowe Coal Company, 154 Fed. 545, 83 C. C. A. 431. But it is clear that it does not. The position of the defendant with respect to this, is much the same as with regard to that which has been already disposed of, of which it is merely a variation; that is to say, the acts of the cashier having come to the knowledge of the directors, regardless of whether they appreciated their dishonest character, the bank is bound by it. The same fallacy appears in this as in the rest of the argument. The contention is that, knowing the facts, the directors were bound to recognize the dishonesty involved in them, and cannot be heard to say that they did not. But this has been fully answered. They could not, of course, close their eyes to palpable bad faith, and maintain that they did not know when everything was so plain that they were bound to. But that is not this case. The conduct of Hartman was not so manifestly wanting in honesty that this could be said of it. No doubt it was bad banking, and ought to have been so seen, as it was not. But his acts, while derelict, were possibly referable to incompetency or bad judgment, which to that extent would extenuate them. The test being how they appeared at the time, they were not so clearly and positively dishonest that the failure of the directors to realize this and notify the surety was a breach of the covenant which relieved it from loss afterwards. Nor are the instructions on this branch of the case open to the criticism made of them. The distinction attempted to be drawn between dishonesty and bad faith, even if substantial, was not made at the trial, and cannot therefore be insisted on. Neither was any exception taken to that part of the charge—or at least no sufficient one—where it is claimed that this distinction was disregarded, and the dishonesty of which the directors were required to notify the indemnity company improperly limited to that which was known to involve the bank in loss. It may be that the exception "to the instructions as to the $6,350.40 accruing between April 20, 1907, and May 1, 1907," was intended to reach this, but it was altogether too indefinite to do so. As has been many times ruled, the ground of an exception must be stated at the time, in order that the court shall have its attention directed to the error alleged to have been committed and correct it. Merchants' Insurance Company v. Buckner, 110 Fed. 345, 49 C. C. A. 80. And here there is nothing but the broad suggestion that the defendant was not satisfied with the instructions complained of. Assuming that the court may have understood the part of the charge intended to be covered there is no intimation of the legal objection to it, without which it was not sufficient. The instructions given having thus in effect been acquiesced in, and no point having been put to the court expressing the defendant's conception of the law applicable to the covenant to notify, if any error was committed— which we do not concede—the defendant is not in a position to take advantage of it.

Finding, therefore nothing in the record, which requires correction, the judgment is affirmed.