CHARLES W. SCHREIBER TRAVEL BUREAU, INC., and Another, Appellants, v. STANDARD SURETY AND CASUALTY COMPANY OF NEW YORK, Respondent.

Second Department, March 5, 1934.

*Herbert A. O'Brien*, for the appellants.

*Charles W. Froessel* [*Alfred T. Tompkins* with him on the brief], for the respondent.

DAVIS, J.   The plaintiffs have common officers and employed a common bookkeeper and cashier, one Busch.   In this action on a bond given to secure the fidelity of Busch, it is conceded that the premium was paid and a loss followed.   There was a condition in the bond that notice of loss must be given to the insurer within ten days; and a limitation that there should be no liability on the bond " after the Employer shall have become aware of any fraudulent or dishonest act on the part of the Employee."   After the plaintiffs had discovered dishonest and fraudulent acts they were bound to give notice to the insurer before they could recover for subsequent loss.   Under the terms of the bond respecting liability it would appear that plaintiffs were at least entitled to recover their loss during the period preceding such discovery — but no such question was litigated and no recovery had, even in part. After special questions were submitted to the jury, a general verdict was directed for defendant.

The principal question to be determined was whether the plaintiffs did make discovery of acts that they should have known were fraudulent and dishonest.   The peculations of Busch began with small amounts in May, 1930, and continued during July.   The bond was written on August fifth, and took effect on August first. The defendant contended that an incident occurred in June or July constituting dishonesty, of which plaintiffs had notice.   The plaintiffs claimed that the incident occurred much later.   This question the jury has found in favor of plaintiffs.   Busch was taking cash from the drawer and falsifying his bank deposits and books to cover his defalcations.   At one time the secretary of the corporations, Annette Jurgens, who was also cashier, checked up the

cash in the drawer and found that about $500 was missing. That did not necessarily mean dishonesty of the employee. The shortage might have arisen legitimately in a variety of ways — as, for instance, the president might have come in and taken out the money during the absence of Busch; or a mistake might have arisen in the payment of a bill. But it called for an explanation and one was forthcoming. Busch said he had advanced the money to employees, as had been done through authority given him on other occasions. He was informed by the secretary that he had no right to do it without express authority from the president or herself; whereupon Busch said he would immediately get the money back. Later in the same day he secretly put $200 of his own in the cash drawer and made another false entry to cover the balance. That night he informed the secretary that the money had been returned by the employees. About these facts there is little dispute.

The primary question is — did the plaintiffs become aware of a fraudulent or dishonest act on the part of their employee by reason of the facts stated? It might be argued that the shortage and its apparent replacement, with notice to the secretary, are conclusive as indicating dishonesty on the part of Busch. That would be the case if the act were known to be dishonest but was condoned on restitution. But if she had reasonable grounds for believing the act to be one of casual irregularity or of careless usurpation of authority without wrongful intent in advancing to employees moneys to which they would soon be entitled, then plaintiffs did not conclusively become aware that the acts of Busch were actually dishonest and fraudulent. It is necessary to distinguish between the real quality of the act and that which the secretary discovered. There was undoubted dishonesty on the part of the employee. It was to secure plaintiffs against loss arising from such acts that the bond was given and the premium paid. The liability of defendant ceased when the plaintiffs discovered an act of dishonesty, fraud or theft. The discovery is the important element. Did plaintiffs acquire knowledge of facts from which the conclusion of dishonesty and fraud reasonably would follow? This, as we believe, presents a mixed question of law and fact which must be submitted to the jury for determination under proper instructions.

At the close of the trial both sides moved for a directed verdict and the motions were denied. The learned trial court then submitted three special questions to the jury. They related entirely to a " loss " and notice. The jury found that plaintiffs discovered a " loss " more than ten days prior to the giving of notice. Nothing

was said concerning the fact as to whether the " loss " occurred through actual dishonest and fraudulent acts of Busch of which plaintiffs became definitely aware.

The language of the bond is that of defendant and will be construed most strongly against it. In using the words " fraudulent or dishonest," the plaintiffs were entitled to interpret them according to their ordinary meaning. The definition of these words in all dictionaries implies a wrongful purpose and moral obliquity. The bond contained no limitation different from the doctrine long existing respecting liability after discovery by the insured of theft or downright dishonesty or fraud — except in the limitation of time as to notice. (*Phillips* v. *Foxall*, L. R. 7 Q. B. 666; *Sanderson* v. *Aston*, L. R. 8 Exch. 73; *Atlantic & Pacific Tel. Co.* v. *Barnes*, 64 N. Y. 385, 389; as to general rule see 15 Halsbury's Laws of England, p. 558, § 1044.)

The question as to what constitutes dishonesty in the sense used here has been considered in cases sometimes in relation to fraud in the application and sometimes in actions on a bond. The principle is the same in both. The rule in this and other jurisdictions is that misconduct constituting fraud and dishonesty must amount to more than casual acts consisting of irregularities, mistakes and omissions of duty. There must be acts coming to the knowledge of the employer that involve bad faith, willfulness, a breach of honesty, a want of integrity, or moral turpitude affecting the official fidelity or moral character of the employee, before the insurer can escape liability. Such acts may or may not amount to a crime. (*Bostwick* v. *Van Voorhis*, 91 N. Y. 353; *Atlantic & Pacific Tel. Co.* v. *Barnes, supra*, 389, 390; *Ætna Indemnity Co.* v. *Farmers' Nat. Bank*, 169 Fed. 737; certiorari denied, 215 U. S. 601; *American Surety Co.* v. *Pauly, No. 1*, 170 id. 133, 145, 146; *National Surety Co.* v. *Western Pacific R. Co.*, 200 Fed. 675; certiorari denied, 229 U. S. 616; *Lancashire Ins. Co.* v. *Callahan*, 68 Minn. 277; *Home Insurance Co.* v. *Holway*, 55 Iowa, 571; *Watertown Insurance Co.* v. *Simmons*, 131 Mass. 85.) As we have said, the question here was not whether there had been loss through fraud and dishonesty, but what knowledge the plaintiffs had acquired concerning the acts of Busch. It involves the apparent credibility of the explanation offered for the shortage, in view of the earlier custom of making advancements to employees, and the reasonableness on the part of the secretary in accepting it as true. This issue has not been tried and determined.

There is another reason for reversal. Defendant set up in its answer the defense of a breach of warranty in the application. The application was not made a part of the bond either by reference

or by attaching it thereto. The bond itself contained no warranties. Plaintiffs' counsel seasonably made a motion to dismiss this defense and the motion was denied. The president of the corporations, called as a witness, was interrogated by defendant's counsel concerning these alleged warranties; and over objection the latter put in evidence the application itself. Later, counsel for plaintiffs renewed his motion to strike out the defense and the motion was granted. But the evidence was not struck out, nor was the jury told to disregard it. In fact the defendant later submitted testimony by its vice-president, over objection, that he " relied " on the application in writing the bond. There was no defense of fraud, and the defense of breach of warranty had already been struck out. This must have been confusing to the jury, who were called upon to determine special questions on the evidence. The application, if competent at all, was competent only to show the duties and authority of the secretary, whose knowledge of fraud and dishonesty would bind the corporations — and all that had already been shown by testimony and stipulation. Under the circumstances disclosed, the knowledge of the secretary was that of the corporations. ( *National Discount Co.* v. *U. S. F. & G. Co.*, 47 Misc. 678.)

The judgment and order should be reversed on the law and the facts and a new trial granted, costs to appellants to abide the event.

LAZANSKY, P. J., YOUNG, KAPPER and CARSWELL, JJ., concur.

Judgment and order reversed on the law and the facts and a new trial granted, costs to appellants to abide the event.