JAMESTOWN BRIDGE COMMISSION *vs.* AMERICAN EMPLOYERS' INSURANCE COMPANY.

JANUARY 10, 1957.

PRESENT: Flynn, C. J., Condon, Roberts and Paolino, JJ.

Roberts, J. This is an action in assumpsit to recover benefits alleged to be due under a policy of indemnity insurance issued by the defendant. The case was tried before

a justice of the superior court sitting with a jury and a verdict was returned for the plaintiff in the amount of $4,026 with interest. The case is before us on the defendant's exceptions to the denial of its motions for a directed verdict and for a new trial, and on various other exceptions to rulings during the trial.

The plaintiff is a public corporation organized by a special act of the legislature of this state for the purpose of building, maintaining, and operating a toll bridge across an arm of Narragansett Bay connecting the towns of Jamestown and North Kingstown. The principal office of the plaintiff corporation is in the town of Jamestown. The defendant is an insurance company organized under the laws of Massachusetts and doing business in the city and county of Providence.

It is not disputed that during the period referred to in the declaration M. James Vieira was employed by plaintiff and further that there were in full force and effect two policies of indemnity insurance issued by defendant which insured plaintiff against any loss it shall "prove to have been caused by the fraud or dishonesty of any of the Employees * * *." Since the two policies provide for identical coverage, we shall treat them as if but one policy had been issued. The question raised by the pleadings is whether, under the terms of the insurance contract, defendant must indemnify the plaintiff for losses alleged to have occurred by reason of the taking by one of its employees, namely, the general manager of the corporation, of sums of money alleged to be in excess of his salary.

It appears from the evidence that the employee had been associated with the commission for a number of years. He was a member of the commission from May 1944 to May 1951 and served as its secretary-treasurer from May 1945 to May 1948. He served as legal adviser or counsel to the commission from May 1945 through May 1948 and was the commission's vice chairman from May 1948 to May 1951.

What is most pertinent to the case, however, is his service to the commission in a managerial capacity. This particular service began when he served as assistant general manager during the months of December 1947 and January 1948. In February 1948 following the death of the former general manager he acted as general manager. During that month at a meeting of the commission he was hired by oral contract to serve as general manager for the commission for one year to March 1, 1949. The resolution of the commission recording this contract, dated February 27, 1948, provided for "a fixed minimum salary of $4800.00, subject to be increased by the same percentage as any other Jamestown Bridge employees may from time to time receive as a general pay increase * * *." The evidence shows that his predecessor in office and all employees of the plaintiff received an increase in salary of 15 per cent during 1947.

On February 25, 1949 the commission voted to negotiate a written contract with M. James Vieira concerning his employment as general manager. Such a contract was executed and it provided that he should receive a "fixed minimum salary of $4800.00" under the terms and conditions set out in the resolution providing for the one-year contract. The term of this contract was for ten years, and thereafter from year to year subject to termination on six months' written notice as therein set forth.

The commission's office secretary testified that among her duties she prepared payrolls and salary checks and that she was instructed by Vieira to make out his check in the same amount as that paid the former general manager, which was $460 monthly. According to her testimony, which was corroborated by other evidence, the salary of the former manager had been raised from $400 monthly to $460 monthly in December 1947 as part of a general 15 per cent raise for all plaintiff's employees. She further testified that after the ten-year contract had been entered into, she made out the first check thereunder on March 31, 1949 in the amount of $460 according to instructions from Vieira.

At the conclusion of the testimony defendant moved for a directed verdict, which motion the trial justice denied. The defendant took an exception thereto. In passing on defendant's motion for a directed verdict, the trial justice was bound to consider all the evidence in the light most favorable to plaintiff and to draw therefrom all inferences which were favorable to it. If upon such consideration it appeared to him that the jury could not reasonably return a verdict for plaintiff, he should have granted the motion and directed a verdict for defendant. In passing upon defendant's exception to the denial of its said motion, we must view the evidence and reasonable inferences therefrom in the same light. *Cavallaro* v. *Sharp,* 84 R. I. 67, 121 A.2d 669. After so viewing the evidence and drawing every favorable inference therefrom, it is our opinion that a jury could not reasonably have returned a verdict for the plaintiff and that the trial justice therefore erred in denying the defendant's motion for a directed verdict.

The motion for a direction in the instant case raises the primary question of what plaintiff must prove in order to establish fraud or dishonesty under the policy. It is not necessary, in order to establish defendant's liability, to prove *beyond a reasonable doubt* that the loss resulted from the commission of a crime. The word "dishonesty," which is the one we are here concerned with, is to be given broad significance and construed most strongly against the insurer who wrote the policy. This does not mean, however, that every loss resulting from the actions of an employee renders the insurer liable to the insured. The word "dishonesty" is not so broadly construed as to require indemnification for losses arising from casual conduct consisting of acts or omissions in the nature of honest mistakes, irregularities, carelessness, or inefficiency. *Schreiber Travel Bureau, Inc.* v. *Standard Surety & Casualty Co. of New York,* 269 N. Y. Supp. 804.

In our opinion, to establish liability for dishonesty under the policies it is only necessary to prove *by a fair preponder-*

*ance* of the evidence that the employee acted with an intent to wrongfully deprive his employer of its property. The existence of such an intent may be inferred reasonably from the conduct of the employee.

In the instant case no evidence of such nature has been adduced. The evidence shows that the employee first worked under an oral and then a written contract with plaintiff, each of which provided that he should receive as compensation for his services "a fixed minimum salary of $4800.00," and also provided that he should participate in any general salary raises given plaintiff's other employees. The evidence further shows that when he took office as general manager, his predecessor and other Jamestown Bridge Commission employees generally had received a 15 per cent raise. It is clear he directed that the payroll be prepared and his salary check made out in the amount paid his predecessor. This was all done openly and without any attempt at secrecy or concealment. The records were kept accurately and without falsification and were known or available to his superiors. We do not think that in this state of the evidence the jury would be warranted in drawing an inference that the employee took salary in excess of $4,800 with intent to wrongfully deprive plaintiff of the difference between the minimum salary fixed in the contract and the salary actually paid the employee. It is our opinion that it was error to deny defendant's motion for a directed verdict. That being so, there is no necessity for considering defendant's other exceptions.

The defendant's exception to the denial of its motion for a directed verdict is sustained, and on January 18, 1957, the plaintiff may appear before this court and show cause, if any it has, why the case should not be remitted to the superior court with direction to enter judgment for the defendant.

On Show Cause Order.

FEBRUARY 28, 1957.

PER CURIAM. In the above-entitled case, pursuant to our

opinion heretofore filed, the plaintiff through its attorneys appeared to show cause why the case should not be remitted to the superior court for entry of judgment for the defendant as therein directed. At that time reasons were presented in support of its contention that the verdict for the plaintiff should be sustained.

Upon consideration we are of the opinion that no sufficient cause has been shown to change our conclusions. The case therefore is remitted to the superior court for entry of judgment for the defendant as directed in the opinion.

*Letts & Quinn, Andrew P. Quinn, Daniel J. Murray, A. Peter Quinn, Jr.,* for plaintiff.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan, Charles H. Drummey,* for defendant.