◼ CAPITAL BANK & TRUST COMPANY, Appellant, v GULF INSURANCE COMPANY, Respondent. [937 NYS2d 463]—

Peters, J.P.

During the course of discovery, John Brunner, who had served as plaintiff's president from February 2001 to June 2003, was deposed. He stated that in 2001 he discovered that White had been forging his (Brunner's) signature on loan documents, particularly credit extensions and renewals for certain "nonperforming loans" that White did not have the authority to approve. According to Brunner, he then confronted White, who admitted to the forgeries. Brunner advised him that his actions were a violation of bank policy and should not be repeated. While Brunner also brought the issue to the attention of plaintiff's chairman of the board, no further action was taken because, according to Brunner, White was plaintiff's top performing loan officer and his forgeries involved problem loans and did not exacerbate loan performance. Interestingly, Brunner did not document any of the information he discovered regarding the forgeries, including the particular loans that were involved.

Following the completion of discovery, defendant moved for summary judgment dismissing the complaint on the ground that the claim was excluded from coverage. Specifically, defendant relied on the provision of the bond excluding coverage for "loss arising out of or in connection with any circumstances or occurrences known to [plaintiff] prior to the inception [of the bond]." Defendant also argued that the claim was barred under the termination provision of the bond, which provided that coverage "terminates as to any [e]mployee . . . as soon as [plaintiff], or any director or officer not in collusion with such [employee], learns of any dishonest or fraudulent act committed [by] any such [employee] while employed by [plaintiff]." Plaintiff opposed the motion and cross-moved for summary judgment on its claim. Supreme Court denied plaintiff's cross motion and granted defendant's motion, prompting this appeal by plaintiff.

Summary judgment was properly awarded to defendant. Under the termination provision of the bond, coverage terminated as to any employee as soon as any officer or director of

plaintiff learned of any "dishonest or fraudulent act" committed by such employee. The ambit of this provision is broad, covering acts committed against plaintiff or any other person or entity "whether or not of the type covered [under the bond]." While "dishonest or fraudulent acts" are not defined in the bond, those words, when used in the context of a fidelity bond, must be given their ordinary meaning and broadly include acts that demonstrate a want of integrity, breach of trust or moral turpitude affecting the official fidelity or character of the employee (*see First Natl. Bank Co. of Clinton, Ill. v Insurance Co. of N. Am.*, 606 F2d 760, 769 [7th Cir 1979]; *C. Douglas Wilson & Co. v Insurance Co. of N. Am., Phila., Pa.*, 590 F2d 1275, 1278-1279 [4th Cir 1979], *cert denied* 444 US 831 [1979]; *Federal Deposit Ins. Corp. v Aetna Cas. & Sur. Co.*, 426 F2d 729, 737 [5th Cir 1970]; *Arlington Trust Co. v Hawkeye-Security Ins. Co.*, 301 F Supp 854, 857-858 [ED Va 1969]; *Schreiber Travel Bur., Inc. v Standard Sur. & Cas. Co. of N.Y.*, 240 App Div 279, 282 [1934]).[2] Furthermore, the conduct need not amount to a crime to constitute dishonesty (*see World Exch. Bank v Commercial Cas. Ins. Co.*, 255 NY 1, 5 [1930]; *Schreiber Travel Bur., Inc. v Standard Sur. & Cas. Co. of N.Y.*, 240 App Div at 282). Here, under any construction, the act of forging another's name without consent in order to approve transactions which he or she does not have authority to approve, and with the admitted purpose of avoiding detection, constitutes a dishonest act.

Nevertheless, plaintiff argues that the conduct discovered in 2001 was not dishonest or fraudulent within the meaning of the bond because the particular forgeries did not result in any monetary loss to plaintiff. According to plaintiff, since Brunner's signature was only forged on credit renewals and extensions, which did not advance new funds to customers but rather extended the time for repayment, no loss occurred and, therefore, use of the signature does not constitute a fraudulent or dishonest act triggering the termination provision. Even if no loss occurred as a result of the 2001 forgeries, the language of the bond contains no requirement that a loss occur in order for conduct to be considered dishonest or fraudulent. The express terms of the bond provide that dishonest or fraudulent acts plus loss presents the basis for a claim; hence, loss is not an element of a dishonest or fraudulent act. Thus, because the forgeries

---

**2.** We note that inasmuch as there is no factual dispute as to the acts committed by White in 2001, the determination of whether or not such acts constitute "dishonest or fraudulent act[s]" within the meaning of the bond presents a question of law for the Court (*see First Natl. Bank of Clinton v Insurance Co. of N. Am.*, 606 F2d at 768; *compare Rock Is. Bank v Aetna Cas. & Sur. Co.*, 706 F2d 219, 222 [7th Cir 1983]).

committed by White constitute dishonest acts and plaintiff was aware of this conduct in 2001, prior to the issuance of the bond, coverage as to White terminated immediately upon inception of the bond.

Moreover, the bond also excluded from coverage any "loss arising out of or in connection with any circumstances or occurrences known to [plaintiff] prior to the inception [of the bond]." As previously noted, it is unclear whether the forgeries discovered in 2001 are related to any of the loans forming the basis of plaintiff's claim and, therefore, an issue of fact exists as to whether the loss "aris[es]" out of circumstances known to plaintiff prior to the inception of the bond. However, the forgeries surely establish a pattern of behavior by White in which he used Brunner's signature to approve actions for which White himself lacked authority. Clearly then, the loss for which plaintiff claimed coverage under the bond "aros[e] . . . in connection with" White's earlier pattern of forging the signatures of plaintiff's presidents on loan documents, which was undisputedly known by plaintiff prior to the inception of the bond. Accordingly, Supreme Court properly concluded that coverage was also excluded under this provision of the bond.

The parties' remaining contentions, to the extent not specifically addressed herein, either are rendered academic in light of our determination or are without merit.

Malone Jr., Stein, Garry and Egan Jr., JJ., concur. Ordered that the order is affirmed, with costs.