FIDELITY & DEPOSIT CO. OF MARYLAND, v. HUNT, Insurance Commissioner of Commonwealth of Pennsylvania.

No. 6929.

Circuit Court of Appeals, Third Circuit.
Oct. 5, 1939.

Frederick H. Knight, of Philadelphia, Pa. (Morgan, Lewis & Bockius, of Philadelphia, Pa., of counsel), for appellant.

Claude T. Reno, Atty. Gen., Walter E. Glass, Deputy Atty. Gen., and Rawle & Henderson, of Philadelphia, Pa. (Thomas F. Mount and Joseph W. Henderson, both of Philadelphia, Pa., of counsel), for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This case now comes before us for the third time. It first appeared as an action by the statutory liquidator of the Penn General Casualty Company (the insurance commissioner of Pennsylvania and plaintiff-appellee here) against the present defendant-appellant to recover upon a policy of fidelity insurance issued by the latter. The gist of the action was that the president of the casualty company, one Love, had prior to its dissolution caused it to sustain a loss of $242,500 within the coverage of the policy ($10,000). The defense was a failure to give defendant-appellant notice of the embezzlement. We held that the question of notice was, under the circumstances, for the jury, reversed the decision of the district court setting aside a verdict in plaintiff-appellee's favor, and granted a new trial, Hunt v. Fidelity & Deposit Co. of Maryland, 3 Cir., 92 F.2d 75. This mandate was subsequently modified on reargument (the case's second appearance) by remanding the cause to the District Court for such further action as might be appropriate in the premises, Hunt v. Fidelity & Deposit Co. of Maryland, 3 Cir., 95 F.2d 491.

The further action which the district court encountered was a petition for leave to file a supplemental affidavit of defense on the part of defendant-appellant. The defense thereby sought to be raised presents an odd, to the say the least, snarl of circumstance. It is alleged that Love owned some 27,990 of the 50,000 shares of the Casualty Company's outstanding capital stock; that Love assigned his shares after the dissolution of that company; that the plaintiff-appellee then obtained, ex parte as far as defendant-appellant was concerned, a decree of the Court of Common Pleas of Dauphin County authorizing the distribution of liquidating dividends; and that two such dividends were distributed to the stockholders, including Love's assignee, one of $4.50 per share on July 7, 1936, the other of 50¢ per share on January 7, 1937. The first distribution took place after plaintiff had secured his verdict in the District Court, but three days before that verdict was set aside. The second occurred during the pendency of the now plaintiff-appellee's appeal, which, as we have seen, led to a reversal.

The learned trial judge thought that this newly alleged matter did not constitute a valid defense and denied the petition. An appeal from this ruling brings the case before us again. It is accompanied by a further complication in the shape of a supplemental petition from which it appears that defendant-appellant has during the pendency of this appeal made application to the Court of Common Pleas of Dauphin County requesting that the judgment entered against it in the district court be satisfied from the undistributed assets of the casualty company. The question thus present involves some of the issues at bar, and the learned county court has postponed its action to await our decision.

**44**

In the interest of brevity we must begin by stating that, in our opinion, Love's assignee occupies, as against both parties here, the same position that Love would have occupied. That is because Love's shares were assigned long after dissolution of the Casualty Company had been decreed. Hence, under all the authorities, the assignee merely succeeds to Love's net interest in the corporate property. Fletcher's Cyclopedia of the Law of Private Corporations, Vol. 12, sec. 5461, Vol. 16, sec. 8131. A second and more important effect of the dissolution is the lien thereby imposed upon the corporate property allocable for distribution on Love's stock. In many jurisdictions, corporations have been accorded a statutory lien on their stock for debts owing them from stockholders, 13 Am.Jur. 444, 80 A.L.R. 1352, note, and this lien has been held to cover amounts embezzled, Sproul v. Standard Plate Glass Co., 201 Pa. 103, 50 A. 1003. Nevertheless on the briefs and record before us, we are unable to ascertain whether a technical statutory lien existed prior to the Casualty Company's dissolution. See Purdon's Pennsylvania Statutes Annotated, Title 15, §§ 133, 315. However that may be, we think the inherent fairness of such a lien as between corporation and stockholder is self-evident. The only objection to it is found in the common law's distrust of secret liens (which necessitated the statutes) Fletcher, above cited, Vol. 11. Sec. 5261. That objection having been removed by the decree of dissolution, we see no reason to doubt the creation of a cognate equitable encumbrance on the corporate assets represented by Love's stock.

We are satisfied mathematically that had distribution been made with an eye to foreclosing this encumbrance or lien, $242,500, or the entire amount of the loss, might have been recouped. The precise calculations are set forth in an appendix to this opinion. Conversely, if defendant-appellant had paid on the policy, its right of subrogation would have entitled it to proceed against Love, 25 C.J. 2116-7, 8 Couch, Cyclopedia of Insurance Law 2032, 7 Cooley, Briefs on Insurance 6608, and eventually to reimburse itself by a similar foreclosure.

Defendant-appellant shapes its argument to fit the actual facts. It urges that the distribution which took place discharges it, and relies convincingly upon the established proposition that if a creditor has in his possession funds applicable to the payment of a secured debt, which he relinquishes in violation of his duty to preserve them for the benefit of the surety, the surety is discharged, at least pro tanto. 50 C.J. 158, Stearns, The Law of Suretyship, Sec. 98, p. 141. To be sure the case at bar is one of insurance, not suretyship, but the analogy seems nevertheless apt in our peculiar circumstance. See Arant, Why Release of Security Discharges a Surety, 14 Minnesota Law Review 725; Langmaid, Some Recent Subrogation Problems in the Law of Suretyship and Insurance, 47 Harvard Law Review 976, 987, 988. At any rate, plaintiff-appellee does not seriously contest the analogy. His position is that he did not make the distribution "voluntarily", but merely acted as the creature of the Court of Common Pleas. Therefore, it is contended, the suretyship rule is inapplicable. We think it clear, however, both from the statutory system under which plaintiff-appellee operates, and from the order of distribution itself, that he is and was not just a rubber stamp for the Court of Common Pleas. Indeed the situation is, as it should be, almost vice versa.

The most persuasive clue to the role of the insurance commissioner in statutory liquidation proceedings is the provision that "such liquidation shall be made by and under the direction of" that extremely responsible and important official, Purdon's Pennsylvania Statutes Annotated, Title 40, sec. 206. Therefore it was incumbent upon him to effect or direct the liquidation of an outstanding asset, the claim against Love. A fortiori, it was his duty to at least preserve the lien on Love's stock. From this plaintiff-appellee's counsel seek a rather technical refuge in the enactment which governs distributions to stockholders in accordance with the judicial confirmation of an account filed by the commissioner. Purdon's Pennsylvania Statutes Annotated, Title 40, sec. 210. But this statute clearly contemplates such a filing as occurring after liquidation has been accomplished. Here the company was still in liquidation when the order was entered. Moreover plaintiff-appellee's petition for distribution makes no mention of any account. The order itself reads: " * * * the Insurance Commissioner * * * is authorized to distribute * * * to each holder of stock * * * the aliquot share which shall be available for distribution". Petition p. 56. This language cannot be interpreted as compelling distribution in fixed accordance with

a detailed judicial prescription such as an account. It is obviously covered by the cliche, "permissive, not mandatory".

Ample latitude was, we think, left the plaintiff-appellee within which to perform his duty of preserving the lien on Love's stock. He failed in that duty, and since it was also owed, as we have seen, to creditors and innocent stockholders, his failure could hardly (without benefit of unreasonable cynicism) have been anticipated and thus prevented. That being so, defendant-appellant should be allowed to plead its discharge.

The judgment of the District Court is reversed and the cause remanded with leave to the defendant-appellant to file its proposed supplemental affidavit of defense with new matter.

### Appendix

| | |
|---|---|
| Amount of dividend | $250,000.00 |
| For purpose of computing the amount payable to Love after charging his alleged embezzlement against his share of the dividend, add to the cash dividend the alleged embezzlement, or | 242,500.00 |
| Total | $492,509.00 |

equal to 9.85 per share.

Payable to Love,

| | | |
|---|---|---|
| 27,990 shares at 9.85 | $275,701.50 | |
| less | 242,500.00 | |
| | | $ 33,201.50 |

Payable to other stockholders,

| | | |
|---|---|---|
| 22,010 shares at 9.85 | | 216,798.50 |
| Total Payable | | $250,000.00 |